748 A.2d 1263 (2000)
James F. BURNS, Appellant,
v.
The BOARD OF DIRECTORS OF the UNIONTOWN AREA SCHOOL DISTRICT; Harry J.Kaufman, individually and in his capacity as President of the School Board; Kenneth R. Mitchell, individually and in his capacity as board member; Kenneth G. Meadows, individually and in his capacity as board member; Gary J. King, individually and in his capacity as board member; Dorothy J. Grahek, individually and in her capacity as board member; Charles C. Castor, individually and in his capacity as board member; and William Rittenhouse, Jr., individually and in his capacity as board member.
Commonwealth Court of Pennsylvania.
Argued November 1, 1999.
Decided February 11, 2000.
Reargument Denied April 19, 2000.
*1264 Ernest P. DeHaas, Uniontown, for appellant.
John H. Rushford, Pittsburgh, for appellees.
Before PELLEGRINI, J., FLAHERTY, J. and NARICK, Senior Judge.
FLAHERTY, Judge.
Appellant, James Burns (Superintendent) appeals the Common Pleas Court of Fayette County's (Trial Court) dismissal of his Complaint in Mandamus to compel the Board of School Directors (Board) of the Uniontown Area School District (District) to honor his tenure as duly elected District Superintendent of that District. Trial Court sustained the District's preliminary objections and dismissed Superintendent's complaint in mandamus because Trial Court concluded that Superintendent has other adequate remedies at law. We reverse.
Superintendent was first elected by the District as its district superintendent for one five year term from July 1988 until June 30, 1993 and then for another five year term from July 1, 1993 until June 30, 1998.[1]
July 1, 1997 began the final year of the second term of Superintendent. In the primary election in May of 1997, three sitting Board members (whose terms were expiring the first Monday of December of 1997) lost the primary nomination. However, they were still empowered to fulfill their existing term until it ended Monday, December 1, 1997, when, the continuing and newly-elected members "reorganize" the Board during the first week of December of 1997.[2]
Superintendent was notified by letter that at a special meeting of the Board on July 11, 1997, the Board intended to take official Board action to elect him as Superintendent for a five year term and to enter into a contract with him.[3] The July 11, 1997 special meeting of the Board was duly advertised and convened. By a 6-1 vote, a majority of the Board elected Superintendent to that office for a five year term beginning July 1, 1998 and ending July 1, 2003 and also approved the compensation and other terms and conditions of a five year contract concurrent with that term.
After the November 1997 election, the Board met and reorganized in accordance with the School Code during the first week of December 1997. Then, at a special meeting on December 23, 1997, the newly-elected Board voted to rescind the Superintendent's 1998-2003 contract and his *1265 election.[4]
On January 15, 1998, Superintendent filed a complaint in Trial Court at trial docket No. 94 of 1998 G.D., claiming, among other things, unlawful interference with a contractual relationship, breach of contract, a federal civil rights violation under Section 1983 (of the United States Code), an emotional distress claim and a local agency appeal. Among the relief requested in that complaint is the restoration of Superintendent's contract and position as Superintendent.[5] Superintendent filed a Motion for Partial Summary Judgment on the breach of contract issue which was granted. Trial Court determined on July 2, 1998 that there was a binding contract between Superintendent and District.[6]
On July 2, 1998, Superintendent also filed with Trial Court a second complaint entitled Complaint in Equity and a Motion for Preliminary Injunction to have the District pay Superintendent his salary, based upon the trial court's determination that there was a binding contract. After a July 10, 1998 hearing on the matter, trial court dismissed Superintendent's Application for Preliminary Injunction and dismissed his Complaint in Equity because Trial Court concluded that the pending complaint for breach of contract and tort relief was an adequate remedy at law and found no immediate irreparable harm in light of the pending action for money damages at trial docket No. 94 of 1998 G.D.
On July 31, 1998, Superintendent filed this third action in Mandamus and a Motion for Peremptory Judgment, the decision of which is currently before this Court.[7] District filed preliminary objections to Superintendent's complaint. Superintendent filed an answer to the District's preliminary objections. On August 20, 1998, Trial Court denied the Superintendent's motion for peremptory judgment with prejudice, finding no immediate irreparable harm.[8]
On August 21, 1998, Superintendent tried to have the partial summary judgment order on the breach of contract issue entered as a final judgment. District filed a Petition to Strike, which was granted.
On April 14, 1999, Trial Court sustained the District's preliminary objections to the complaint in mandamus, denying the mandamus and dismissing Superintendent's complaint in mandamus. This appeal followed.[9]
*1266 In this appeal, Superintendent contends that Trial Court erred in denying the mandamus and in concluding that the pending contract action was an adequate remedy for Superintendent. Superintendent argues that Trial Court did not apply the provisions of the School Code to the instant situation and that mandamus is the proper remedy. Superintendent contends that the School Code requires an election of a superintendent at a specified period of time and requires the Board to determine the salary.
Superintendent contends that in the present instance he was duly elected by the sitting Board in accordance with the School Code, that the Board also properly set his salary, that he is unlawfully prevented from fulfilling his duties, that the only statutory provisions for removal of a superintendent were not followed by the Board and that mandamus should lie to compel District to honor the due election of Superintendent and the provisions of his contract.
Statutory Provisions
Article X (ten) of the School Code pertains to superintendents and provides that the board of school directors in every school district shall, by a majority vote of all the members thereof, elect a properly qualified person as district superintendent[10] during the last year of the term of the district superintendent. The sitting superintendent's term shall continue for another three-to-five years if the Board does not take official specific action during the last year of the term at least 150 days in advance of the end of the term to notify the superintendent that another or other persons will be considered for that position. Section 1073 of the School Code, 24 P.S. § 10-1073.
A superintendent does not have tenure like the professional employees, e.g., principals, teachers, etc. A superintendent is not protected by collective bargaining under Act 195 nor is he included under Act 93, as administrators are, with certain rights to meet and discuss. Superintendents have, however, obviously been given select consideration by the Legislature in the School Code, which gives them unique status as a non-voting board member as well as being the chief executive officer of the District. Long term job security for that office is provided by mandating a minimum contract length of at least three years, by restricting removal to four specific reasons, by forcing the school boards to make a decision on retention at least five months before the expiration of the contract and, further, when the sitting board fails to renew, by only allowing a newly organized board less than two months to decide on retention in third through eighth class school districts, i.e., from the reorganization meeting on the first Monday in December until January 31st, the 150th day before July 1st, when the school year ends and most superintendents' contracts end.
It was, therefore, prudent and permissible for the sitting Board to take positive action to establish and support Superintendent's role as the educational leader of the District within the mandate of the law more than 150 days before the expiration of Superintendent's term. By *1267 expressly mandating the procedure for the re-election of Superintendent, for renewal of his contract and by expressly providing for removal thereafter, the Legislature excluded by implication any exception to that procedure in election years for school board members, i.e., expressio unium est exclusio alterium. Although Board argues that only the members of the reorganized board should make the decision on renewal of Superintendent's contract, the Legislature had good reasons to place the stability of the educational system ahead of the political ramifications of elections occurring in the last year of the superintendent's contract. To postpone the hiring of the superintendent during the seven month period from May to November in the last year of his contract could undermine, stifle and weaken his leadership of the educational professionals who could view his decisions as only temporarily effective, freeze decisions by him on curriculum, hiring, purchasing and other vital matters and increase instability by encouraging superintendents to shop around for a position with more security. On the other hand, positive action to renew would also avoid the possibility that a sitting superintendent could be viewed as having retained his position merely by default if the new board became mired in controversy or for any other reason failed to notify him during the short seven or eight week window mandated for the decision on non-renewal to be made.
With regard to compensation being set by the sitting Board, the School Code mandates that:
The board of school directors at any convention electing a district superintendent... shall determine the amount of salary to be paid such district superintendent... which compensation shall be paid out of the funds of the district.
Section 1075 of the School Code, 24 P.S. § 10-1075.
Further, the School Code imposes not only rights but also specific duties upon an elected district superintendent including, but not limited to, having a seat on the school board and the ability to speak to the school board on all matters, albeit without a vote, further evidencing the importance for each school district to elect a qualified superintendent in the last year of the contract.[11] The Legislature clearly intends that the unpaid citizen school directors shall have a qualified superintendent, who is a commissioned officer of the Commonwealth of Pennsylvania,[12] present to provide the directors, as well as the administrators, teachers, other employees and students, with professional executive and pedagogical leadership, direction and advice regardless of the vagaries inherent in the elections of board members. See Sections 1001 and 1003 of the School Code, 24 P.S. §§ 10-1001, 10-1003.
Finally, the School Code provides only one mechanism for the removal of a duly elected superintendent. That mechanism is limited to a due process hearing with notice and removal for only one of four stated reasons.[13] There is no dispute that *1268 the Board in this case did not follow that statutory scheme to remove Superintendent by votes to "rescind" both the election and the contract without any authority after he was duly elected to a new term and had executed a new contract. There is no authority in the School Code for the action of rescission by the reorganized 1997 Board.
Mandamus
Mandamus is an action at law, which requires filing a complaint that sets forth the following:
1. the plaintiff and all party defendants;
2. the facts upon which the plaintiff relies for the relief sought;
3. the act or duty the defendant is required to perform and the refusal to perform it;
4. the interest of the plaintiff in the result;
5. the damages if any;
6. the want of any other adequate remedy at law;
7. a prayer for relief against the defendant commanding him to perform the act or duty he is required to perform and for damages, if any, and costs.
Pa.R.C.P. No. 1095.
Mandamus is an extraordinary writ and a remedy used to compel performance of a ministerial act or a mandatory duty. Borough of Plum v. Tresco, 146 Pa.Cmwlth. 639, 606 A.2d 951 (1992). In order to prevail in an action for mandamus, there must be a clear legal right in the petitioner for performance of the ministerial act or mandatory duty, a corresponding duty in the respondent to perform the ministerial act or mandatory duty, and no other appropriate remedy available. Equitable Gas Co. v. City of Pittsburgh, 507 Pa. 53, 488 A.2d 270 (1985).[14] We have gone so far as to suggest that the existence of an adequate, alternative statutory remedy deprives a court of jurisdiction to grant relief in mandamus. Merritt v. West Mifflin Area School District, 56 Pa.Cmwlth. 126, 424 A.2d 572 (1981).
In the present instance, District contends that Trial Court properly held that Superintendent's complaint for contractual and tort remedies is an adequate remedy in this instance. We disagree.[15]
*1269 In Parents Against Abuse in Schools v. Williamsport Area School District, 140 Pa. Cmwlth. 559, 594 A.2d 796 (1991), we found that:
Although the availability of an adequate contract action might preclude mandamus relief, Kaelin v. University of Pittsburgh, 421 Pa. 220, 218 A.2d 798 (1966); Strank v. Mercy Hospital of Johnstown, 383 Pa. 54, 117 A.2d 697 (1955) (when right or duty asserted rests wholly on contract, a common pleas court cannot issue a writ of mandamus), a mandamus action is proper to enforce a mandatory legal duty imposed on school authorities. Elias v. Board of School Directors of Windber Area, 421 Pa. 260, 218 A.2d 738 (1966); Pittenger v. Union Area School Board, 24 Pa.Cmwlth. 442, 356 A.2d 866 (1976). Because this action involves enforcement of legal duties of the school authorities, a mandamus action is appropriate.
Parents Against Abuse, 594 A.2d at 802.
Here, while there is a pending contract action to determine the liability for monetary and other damages allegedly caused by the Board's action removing Superintendent, that relief only repairs the contractual harm to Superintendent. Mandamus is a relief sought to cure a statutory or extraordinary harm, which cannot be cured through any mechanism other than an order that the statute be followed or that extraordinary harm be corrected.
In the instant case, although there is a contractual relationship, there is also a clear duty in the School Code for a duly elected district superintendent to be elected by the Board, to have his compensation set by the Board and, once elected, there are clear statutory duties imposed upon the superintendent to be responsible for the performance of statutory duties. The relationship between a superintendent, a school board and a school district is, therefore, not merely contractual, but is also statutory.[16]
The harm sought to be repaired in the instant mandamus action is not merely repairing the breach of the contract between Superintendent and Board (as that relief is sought in the appeal at No. 2020 C.D.1999) or the monetary remedies available under the tort claims. The relief of mandamus before this Court is, on the other hand, the relief afforded for the statutory breach in order to enforce the School Code's provisions regarding election, setting compensation and enforcement of the duties of a duly elected superintendent.[17]
The actions of the re-organized Board to remove Superintendent by a mechanism other than expressly provided by law in the School Code is extraordinary in and of itself. The legislature apparently did not contemplate that a school board would ignore the removal processes it provided in the School Code and did not provide specific relief to a superintendent in this instance. Therefore, there is no statutory remedy available to Superintendent to cure the statutory breach committed by the newly-elected Board and as such, mandamus is proper.
Although District characterizes the then-sitting July 1997 Board as a "lame-duck" board, this term has no basis in the School Code. Such a political distinction has no basis in law in determining the rights, duties and obligations of a duly elected board fulfilling duties for their full term. On the contrary, even though some members of the July 1997 Board may not have been nominated for reelection in their respective party, at the time of the July 1997 Board action upon the expiring term of the superintendent, the sitting Board, although not mandated to do so, was fully empowered under the School Code to *1270 make that decision as part of their duties to fulfill their existing term.
The legislature created two and four-year terms for school directors and three to five-year terms for superintendents, so the legislature can also be assumed to have contemplated that this exact scenario could take place when enacting the School Code.
The Board's action in July 1997 was a lawful and mandated fulfilling of its duty under the School Code to act upon Superintendent's expiring tenure. The then-sitting Board did so within the limitations and requirement of the School Code. Superintendent was duly elected on July 11, 1997, at least 150 days before his term expired, during the last year of superintendent's term and in accordance with the mandate of Section 1073 of the School Code, 24 P.S. § 10-1073. The Board also properly acted on his compensation package at the same meeting, in accordance with Section 1075 of the School Code, 24 P.S. § 10-1075. (See RR at 44a).
It is beyond the scope of this mandamus action to determine any claim beyond the ability of Superintendent to fulfill his tenure as District superintendent and the compensation provided to him in the July 11, 1997 contract.
The provisions of the School Code provide for Superintendent's election, tenure, duties and not only his salary, but also "compensation." The monetary remedies in the complaint for contract and tort damages are insufficient to repair the statutory harm committed by the improper removal of Superintendent.
There is, therefore, a clear legal right in Superintendent for performance of his statutorily mandated duties and a corresponding duty in the Board to reinstate him and provide him with the compensation agreed to in the July 11, 1997 contract and there is no other appropriate remedy available.
Thus, mandamus is appropriate to enforce those provisions of the School Code. However, mandamus is not appropriate to enforce the remainder of the terms of Superintendent's contract, because there are no provisions in the School Code which require any other terms of employment by a Superintendent, other than the determination by the Board of the length of the term, his compensation and the recital of certain duties imposed upon the Superintendent under Section 1081, 24 P.S. § 10-1081. The enforcement of the other non-statutory terms are not a subject for the order of mandamus here but are currently the subject of other litigation surrounding the contract, the appeal of which is currently pending before this Court, the disposition of which is for another time.
This Court does, therefore, reverse the order of Trial Court and directs Trial Court to proceed in accordance with this opinion, to issue an order of mandamus to the District and the Board to acknowledge and reinstate Superintendent James F. Burns as the District superintendent in accordance with the July 11, 1997 election of the Board, to acknowledge and provide Superintendent with the compensation provided in the July 11, 1997 contract approved by the Board, and to enforce the statutory duties imposed upon Superintendent.
The order of mandamus shall not apply to other non-statutory contractual terms of the July 11, 1997 contract nor shall the order of mandamus address any other breach of contract or tort remedy sought in any other action before the courts.[18]
ORDER
AND NOW, this 11th day of February, 2000, the order of the Court of Common *1271 Pleas of Fayette County, Pennsylvania at Civil Division No. 1478 of 1998 G.D., denying mandamus is HEREBY REVERSED and remanded for further proceedings consistent with the opinion attached to this order.
This order shall not enforce any non-statutory provision of the July 11, 1997 contract as that dispute is pending an appeal in this Court at No. 2020 C.D.1999.
Jurisdiction relinquished.
NOTES
[1] The Pennsylvania Public School Code of 1949 is the Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §§ 1-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 (School Code). Section 1073 requires that the term of a superintendent last from three to five years, at the discretion of the Board, commencing July 1 of the calendar year in which the superintendent's position expires or at any other time a vacancy occurs. 24 P.S. § 10-1073(b).
[2] The School Code provides that the terms of Board members shall expire on the first Monday of December at the conclusion of their term. Sections 303 and 401 of the School Code, 24 P.S. §§ 3-303, 4-401.
[3] Superintendent's second five year elected contract was to expire on June 30, 1998. Section 1073 of the School Code at 24 P.S. § 10-1073 also requires Board to notify Superintendent in the last year of the contract at least 150 days before the expiration of his term if his contract will not be renewed.
[4] The reproduced record contains the minutes of the meeting of December 23, 1997, which indicate that the 6-3 vote of the Board was to "repudiate, declare void, and rescind the employment contract" of Superintendent, and in a second 6-3 vote immediately following, that the Board, "repudiated, rescinded and declared to be void" the July 11, 1997 election of Superintendent. (RR at 59a).
[5] That complaint did not specifically request the issuance of a mandamus. The prayer for relief simply requested the restoration of the Superintendent to his position in conjunction with his federal civil rights violation claim.
[6] While Trial Court's order granting partial summary judgment does not dispose of all claims of all parties, Trial Court certified that order to be an appealable order under Pennsylvania Rule of Appellate Procedure No. 341 (Pa. R.A.P.) and that order and the entire contract dispute is currently the issue of another appeal currently pending before this Court at No. 2020 CD 99.
[7] The instant action in mandamus requests relief not previously requested in that Superintendent is requesting the court to direct the Board and the District to reinstate him as Superintendent in accordance with the School Code. This relief differs from the money damages requested in the breach of contract and tort claims of the initial complaint and also differs from a mere plea for "reinstatement," since that reinstatement was not in the form of a mandamus.
[8] The entry or denial of a peremptory judgment is considered an interlocutory order and as such, is not a Pa.R.A.P. No. 341 appealable order.
[9] While District contends that our scope of review is plenary where a mandamus complaint fails to state a claim, this is not applicable to the present situation since a review of the Complaint in Mandamus before us reveals that all of the criteria in Pennsylvania Rule of Civil Procedure (Pa.R.C.P.) No. 1095 for a complaint in mandamus were met by Superintendent. District argues that complainant must prove in the complaint that no other adequate remedy at law exists, but we disagree. Pa. R.C.P. No. 1095 clearly sets forth that the mere allegation that no adequate remedy at law exists is sufficient and the Complaint in Mandamus contains such a statement. To require otherwise would require complainant to prove a negative.

Therefore, in this instance, our scope of review is the same in reviewing a trial court's decision to sustain preliminary objections or the granting or denial of a mandamus, as we have both before us, and that scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. See Board of Directors of Palmyra Area School District v. Palmyra Area Education Ass'n, 165 Pa.Cmwlth. 137, 644 A.2d 267 (1994). See also Glenn's Dairy, Inc. v. City of Pittsburgh, 675 A.2d 781 (Pa.Cmwlth. 1996).
[10] Section 1071 of the School Code, 24 P.S. § 10-1071.
[11] Section 1081 of the School Code at 24 P.S. § 10-1081 sets forth the duties of the superintendent as follows:

The duties of district superintendents shall be to visit personally as often as practicable the several schools under his supervision, to note the courses and methods of instruction and branches taught, to give such directions in the art and methods of teaching in each school as he deems expedient and necessary, and to report to the board of school directors any insufficiency found, so that each school shall be equal to the grade for which it was established and that there maybe, as far as practicable, uniformity in the courses of study in the schools of the several grades, and such other duties as may be required by the board of school directors. The district superintendent shall have a seat on the board of school directors of the district, and the right to speak on all matters before the board, but not to vote.
[12] Section 1078 of the School Code, 24 P.S. § 10-1078.
[13] Section 1080 of the School Code, 24 P.S. § 10-1080, provides, "District superintendents or assistant superintendents may be removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors."
[14] Additionally, A peremptory judgment in a mandamus action is appropriately entered only where there exists no genuine issue of fact, and where the case is free and clear from doubt. Shaler Area School District v. Salakas, 494 Pa. 630, 432 A.2d 165 (1981). The burden of demonstrating that no genuine issue of material fact exists and that one is entitled to judgment as a matter of law is on the moving party (here the District) and the record must be examined in the light most favorable to the non-moving party (here Superintendent). Wolgemuth v. Kleinfelter, 63 Pa.Cmwlth. 395, 437 A.2d 1329 (1981).
[15] In addition, although not cited or discussed in its brief, District argued before the Court that this Court's decision in Lobolito, Inc. v. North Pocono School District, 722 A.2d 249 (Pa.Cmwlth.1998) applies to the instant case in support of denial of the mandamus. In Lobolito, a successor school board made a discretionary decision to discontinue certain building projects previously approved by the Board. That decision of the Lobolito school board was made without any statutory authority guiding that board's decision first to approve the projects or secondly, to discontinue the projects. In the present instance, the School Code clearly set forth certain mandates within which the Board must operate and not only empowers, but also directs, school boards to act to elect district superintendents. Likewise, Section 1080 of the School Code, 24 P.S. § 10-1080, is equally clear regarding the method for removing a duly elected superintendent, which removal procedure was not followed here.
[16] Sections 1071 through 1081 of the School Code, 24 P.S. §§ 10-1071 through 10-1081.
[17] Id.
[18] The order of mandamus shall be directed to the Board collectively and to each incumbent Board member named in the caption as a Board member. It is the function of the sitting Board, as that Board may change over the course of this litigation and the term of this subject matter, to adhere to the law.