**Samuel DESIMONE, Plaintiff,**

v.

**COATESVILLE AREA SCHOOL DISTRICT, Defendant.**

No. Civ.A. 02–0018.

United States District Court, E.D. Pennsylvania.

Feb. 13, 2003.

Alan J. Jarvis, Coatesville, PA, for Plaintiff.

Steven K. Ludwig, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, William S. Huganir, West Chester, PA, David B. Dowling, Rhoads & Sinon, Harrisburg, PA, Bonnie A. Sheehan, Fox, Rothschild, O'Brien & Frankel, Lansdale, PA, for Defendant.

## MEMORANDUM

ROBRENO, District Judge.

This is an action by Samuel DeSimone against the Coatesville Area School District ("CASD") for a violation of 42 U.S.C. § 1983, wrongful discharge, and breach of contract, all in connection with DeSimone's termination from the position of acting school superintendent. With respect to CASD's alleged violation of § 1983, the pivotal issue before the court is whether Pennsylvania law, and, in particular, § 10–1080 or § 5–514 of the Public School Code, vests acting superintendents with property rights in their employment. Specifically, as it applies here, the question is whether an acting superintendent may be terminated from his or her employment in the absence of notice, a hearing, and specified causes for removal. No Pennsylvania court has previously addressed this issue. The parties have filed cross-motions for summary judgment on each of DeSimone's three claims, which the court will address seriatim.

## I. FACTS

Samuel DeSimone served as Superintendent of the Coatesville Area School District from 1974 until he retired in June 1985. On June 28, 2000, DeSimone was hired by the Coatesville Area School District Board of Directors ("Board") to serve a one-year term as Acting Superintendent at an annualized salary of $120,000 ($10,000 per month), commencing on June 28, 2000.

The Agreement between the parties provided for termination as follows:

Either the District or DeSimone may terminate this Agreement at anytime by giving to either the District or DeSimone thirty (30) days written notification of termination of this Agreement. The notification shall be in writing. The District shall deliver any such notice to DeSimone at his office. DeSimone shall deliver any such notice to the District by delivery of the notice to the Board Secretary.

On January 5, 2001, Ronald M. Scott, President of the CASD Board, delivered a letter to DeSimone's office, which stated in relevant part:

When you were hired as Active Superintendent you were advised that if you worked only ninety-five days that your pension would remain in pay status, but if you worked full-time your pension would go into non-pay status only for the duration of your working for the District after you exceeded working ninety-five days. At that time you did not commit to one or the other. This was attempted to be rectified by the written Contract in September 2000 when you committed to ninety-five days in one year. Nevertheless, essentially, you continued to work full-time. The Board was of the opinion that you would either leave within the allowable time or forego your retirement benefits only during the time you worked for the District at the substantial salary of $120,000.00 a year.

Your having not advised the Board nor the Solicitor of your decision not to take salary after November 2000 and become "inactive" has left the Board in, an indeed, precarious position as we have not, in effect, had an Acting Superintendent since that time.

Therefore, it is the decision of this Board that we consider your decision on being inactive to be a resignation under the terms of the Contract, and your

services for the District having concluded as of November 30, 2000. Because of your fine service to this District ..., the Board is considering offering you a severance in lieu of any and all claims against the [D]istrict. These decisions were reached by a formal poll of the Board necessitated by this emergency situation.

On January 11, 2001, DeSimone's termination was discussed at a special board meeting.[1] At the end of that meeting, the Board resolved as follows:

That the District terminate its contractual relationship with Dr. Samuel DeSimone and pursuant to the 30-day notice clause in the contract make that effective today, January 11, 2001. Dr. DeSimone will be on furlow (sic) during that 30-day notice period and will have no official duties. The motion carries 6-2-1 (Leonard Fredericks and Sharon Scott voted no; Deborah Thompson was absent.)

DeSimone subsequently filed this lawsuit, and alleged (1) deprivation of a statutorily protected property interest in violation of 42 U.S.C. § 1983, (2) wrongful discharge, and (3) breach of contract for failure to notify him of the Board's intent to terminate the employment relationship, as his contract required.

## II. DISCUSSION

### A. 42 U.S.C. § 1983 and Applicable Law

■ Section 1983 provides a cause of action to a person who has been deprived of rights secured by the constitution or by federal statutes under color of state law. *See* 42 U.S.C. § 1983. As a threshold issue, a court must determine in every case "whether a plaintiff has sufficiently

alleged a deprivation of a right secured by the Constitution." *Brown v. Pa. Dep't. of Health Emergency Med. Servs. Training Inst.,* 318 F.3d 473, 476–77 (3d Cir.2003). Therefore, when a claim involves an alleged deprivation of due process arising out of the termination of a specific employment position, the plaintiff must first establish that he has a property interest in the employment at issue. *Latessa v. N.J. Racing Comm'n.,* 113 F.3d 1313, 1318 (3d Cir.1997) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). In doing so, the plaintiff may look to (1) express state statute or regulation, *see Carter v. City of Philadelphia,* 989 F.2d 117, 120 (3d Cir.1993); (2) government policy, *id.;* or (3) an implied agreement between an employer and an employee. *See Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The relevant source of property rights in this case is state law.

### 1. *24 P.S. § 10–1080 does not vest acting superintendents with property rights in continued employment*

■ Section 10–1080 of the Public School Code,[2] which establishes procedural rights for district superintendents facing removal, states in relevant part that:

District superintendents ... may be removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors.

24 P.S. § 10–1080. DeSimone contends that his procedural due process rights

---

**1.** DeSimone and his lawyer attended that meeting, and DeSimone addressed the Board at that time.

**2.** As DeSimone emphasizes, his contract with CASD establishes that Pennsylvania law is to govern the interpretation and enforcement of the contract.

were violated because the notice that he received from the Board of the termination action did not conform to these requirements.

Defendant counters that § 10–1080 does not apply, because DeSimone was not a district superintendent, but rather an *acting* superintendent. In particular, defendant contends that plaintiff's removal is governed by 24 P.S. § 10–1079, a statutory provision dealing expressly with the position of acting superintendent, which states that:

> Whenever a board of school directors finds it impossible or impracticable to fill immediately any vacancy occurring in the position of district superintendent, the board may appoint an acting district superintendent ... to serve not longer than one year from the time of his appointment.

24 P.S. § 10–1079. CASD argues that § 10–1079 is dispositive of the outcome of DeSimone's lawsuit, because, unlike § 10–1080, § 10–1079 was specifically designed to vest school boards with the flexibility to formulate solutions to emergency scenarios by creating a position that is temporary by its very nature.

Conceding that he is not expressly covered by § 10–1080, DeSimone argues that the Pennsylvania rules of statutory construction that apply to the Public School Code inform that his type of claim arises under a provision that is to be "liberally construed to effect [its] objects and to promote justice." 1 P.S. § 1928.[3] Plaintiff contends that, under the liberal construction to be afforded to this statute, excluding acting superintendents from § 10–1080 would be illogical and contrary to the purposes of the statute, because,

under such a construction, acting superintendents would be required to perform the same statutory duties as superintendents, yet receive none of the statutory protections.

█ This argument is not persuasive for two reasons. First, a canon of statutory construction providing for a liberal construction of a certain type of statute is not a license for the court to rewrite the statute in a manner that will defeat its overall purpose. On its face, § 10–1079 is to provide school boards with the power and flexibility to hire an interim superintendent while searching or waiting for a permanent one. If § 10–1080 applied to acting superintendents, it would prevent the Board from replacing the acting superintendent with the permanent replacement that it had been seeking, if the acting superintendent was not guilty of neglect, incompetency, intemperance, or immorality. Therefore, applying § 10–1080 to acting superintendents would defeat the purpose of § 10–1079. Second, had the Pennsylvania legislature intended to include "acting" superintendents in the protections of § 10–1080, it presumably would have said so in the section itself. The fact that the legislature accorded the position of acting superintendent its own section in the Public School Code, separate and apart from the district superintendent's section, suggests that the position is truly distinct from that of district superintendent. Therefore, the court concludes that, even under the liberal construction of the Public School Code suggested by plaintiff the protections of § 10–1080 were not intended to extend to acting, as opposed to district, superintendents,[4] and that § 10–1080 does not cre-

---

**3.** Situations requiring strict construction involve provisions that are penal, retroactive, imposing taxes or eminent domain, exempting persons or property from taxation or eminent domain, decreasing the jurisdiction of

the court of record, and provisions enacted finally prior to September 1, 1997, which are in derogation of common law. 1 P.S. § 1928.

**4.** DeSimone cites to *Burns v. Bd. of Dirs. of Uniontown Area Sch. Dist.*, 748 A.2d 1263

ate in DeSimone a cognizable property right to continued employment.

### 2. 24 P.S. § 5–514 does not vest acting superintendents with property rights in continued employment

■ DeSimone next contends that he has a protected property interest as established under 24 P.S. § 5–514. CASD counters that this provision does not apply. Section 5–514 states in relevant part:

> The board of school directors in any school district, except as herein otherwise provided, shall, after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employees (sic), or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

24 P.S. § 5–514. In practical effect, this provision establishes that "nonprofessional public school employees have a property right in their expectation of continued employment...." *Lewis v. Sch. Dist. of Philadelphia*, 690 A.2d 814, 817 (Pa. Cmwlth.1997).

The framework of the Public School Code itself suggests, contrary to DeSimone's argument, that the Pennsylvania legislature reserved the procedural protections of § 5–514 for employees whose tenure was not specifically addressed in other statutory provisions. *Compare, e.g.,* 24 P.S. §§ 11–1121, 1122 (detailed protections for "professional employees") *with* 24 P.S. § 5–514. To put it another way, § 5–514 appears to be a catchall that provides very

basic and general protections to those employees not otherwise covered by statute. In stark contrast, § 10–1079, which explicitly addresses the position of acting superintendent, provides for hiring on an at-will basis. *See* discussion, *supra* Part II.A.1. In this context, engrafting the procedural protections of § 5–514 onto the position of acting superintendent would contravene the objects and purposes of the legislature's express directive in § 10–1079. Therefore, the court concludes that § 5–514 does not extend procedural protections to acting superintendents, and did not create in DeSimone a property right in continued employment. Because DeSimone had no protected property interest under § 10–1080 or § 5–514, and was an at-will employee, he was entitled to no process. Accordingly, the court will grant summary judgment in favor of CASD on DeSimone's § 1983 claims.

### B. Wrongful Discharge

■ As the parties apparently concede, DeSimone's state law claim of wrongful discharge against CASD is barred by sovereign immunity, as the tort of wrongful discharge is not one recognized as an exception to sovereign immunity in the Political Subdivision Tort Claims Act. *See De-Muro v. Philadelphia Housing Auth.*, No. Civ. A. 98–3137, 1998 WL 962103, at *4 (E.D.Pa. Dec. 22, 1998) ("As the allegations [of wrongful discharge] ... are intentional torts which do not fall into any of the enumerated exceptions, the PHA is immune from suit under the doctrine of sovereign immunity.").[5] Therefore, the

---

(Pa.Cmwlth.2000) in support of the argument that he had a property interest in his employment. *Burns* is inapposite, however, because it involved a district superintendent, rather than an acting superintendent.

5. The relevant statutory provision is 42 P.S. § 8522, which states that the only exceptions

to sovereign immunity are for vehicle liability, medical-professional liability, care, custody or control of personal property, real estate, highways and sidewalks, potholes and other dangerous conditions, care, custody and control of animals, and liquor store sales. 42 P.S. § 8522.

court will grant summary judgment in favor of defendant CASD and against plaintiff DeSimone on his claim of wrongful discharge.

### C. Breach of Contract

█ In his final argument, DeSimone contends that CASD breached its contract with him by failing to provide 30–day written notice of termination in conformance with the provisions of his contract with CASD. In particular, DeSimone argues that the January 5 letter did not provide 30–day notice of termination as required under the contract, because the letter does not explicitly state that the Board either had terminated DeSimone, or would do so in the future. Consequently, DeSimone asserts that his contract was not properly terminated, and continued to run for its entire one year period. The court does not agree.

Although it does not use the buzzword "termination" or explicitly state that it constitutes the contractually required 30–day notice of termination, the Board's January 5 letter nonetheless provided DeSimone with unambiguous notice that the contractual relationship between the parties was at an end. The letter advised DeSimone that the Board, following a formal poll of its members, had decided to construe his decision to take inactive status as a "resignation" and that his services were deemed "concluded" as of November 30, 2000. Further, the letter states that the Board was considering offering DeSimone a "severance in lieu of any and all claims against the District." This language, all of which explicitly references the reasons for, and the mechanics of, ending an employment relationship, renders the Board's January 5, 2001 letter effective written notice of termination.[6]

Furthermore, the record reveals that DeSimone's termination became effective over 30 days after he received written notification and in conformance with the terms of his employment contract. By formal resolution on January 11, 2001, the Board ratified the decision noticed in the January 5 letter, and set the effective date of DeSimone's termination for February 10, 2001. Thus, DeSimone's termination occurred 36 days after he received notice. Therefore, the court concludes that CASD did not breach its contract with DeSimone, and will grant summary judgment in favor of defendant CASD and against plaintiff DeSimone on DeSimone's breach of contract claim.

### III. CONCLUSION

For the foregoing reasons, the court will grant summary judgment in favor of defendant Coatesville Area School District and against plaintiff Samuel DeSimone on all counts.

An appropriate order follows.

### ORDER

**AND NOW**, this **12th** day of **February, 2003**, it is hereby **ORDERED** that plaintiff's motion for summary judgment (doc. no. 13) is **DENIED** and defendant's motion for judgment on the pleadings and for

---

**6.** As CASD points out, DeSimone also construed the January 5, 2001 letter to be written notice of termination. The following exchange occurred at DeSimone's deposition:

> Q: Prior to the meeting on January 11, 2000(sic), was a notice delivered to you of your termination at your office?
>
> A: I was told verbally on January 4th by Mr. Scott over the phone. Then on the 5th, Mr. Huganir and him appeared in the office.
>
> Q: The answer is yes, you received notice in writing of your termination?
>
> A: Yes.

Def.'s Mot. for J. on the Pleadings and for Summ. J., Exhibit B.

summary judgment (doc. no. 12) is **GRANTED**.

    **AND IT IS SO ORDERED.**

### *ORDER*

    **AND NOW**, this **12th** day of February, 2003, it is hereby **ORDERED** that judgment is **ENTERED** against plaintiff Samuel DeSimone and in favor of defendant Coatesville Area School District.

    **AND IT IS SO ORDERED.**