IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shemeca Crenshaw, Ed.D.,                    :
                          Appellant          :
                                             :
             v.                              :    No.   660 C.D. 2020
                                             :    Argued:  February 8, 2021
Pittsburgh Public Schools                    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON                         FILED:  March 2, 2021


           Before this Court is the appeal of Shemeca Crenshaw, Ed.D. (Crenshaw) from the June 8, 2020 Order (Order) of the Allegheny County Court of Common Pleas (trial court) sustaining the preliminary objections of Pittsburgh Public Schools (District) and dismissing Crenshaw's amended complaint.

## I.     Background

           Crenshaw is employed by the District as principal of its online academy.  She asserts that the District promised to pay her $42,000 for assuming teaching duties, which went beyond the scope of her role as a principal.

           In the 2015-2016 school year, Crenshaw performed grading and instructional support for over 180 students in grades 4-12 due to a shortage of teaching staff.  Crenshaw continued to provide these same kinds of services in school years 2016-2017, 2017-2018, and 2018-2019.  Crenshaw asserts that the District

owes her $10,500 for the duties she performed in each of the aforementioned school years, for a total of $42,000. Crenshaw's Br. at 10-12.

Crenshaw filed a complaint with the trial court on December 4, 2019, alleging breach of contract. In her complaint, Crenshaw stated that the Pittsburgh Federation of Teachers (teachers' union) entered into a Memorandum of Understanding (MOU) with the District in 2014-2015 and that, per the MOU, Crenshaw entered into an oral agreement with the District which entitled her to payment of the aforementioned $42,000 for the performance of the duties referenced above. Reproduced Record (R.R.) at 10a-11a. Crenshaw asserted that the District failed to compensate her accordingly, and, thus, it breached the oral agreement, depriving her of the compensation she was owed while unjustly enriching itself. R.R. at 11a.

In response to the complaint, the District filed preliminary objections, asserting that Crenshaw had failed to plead sufficient facts to establish the existence of an oral contract and failed to state a claim upon which relief could be granted. R.R. at 19a-28a.

In an order dated February 5, 2020, the trial court sustained the District's preliminary objections but gave Crenshaw 30 days to file an amended complaint. R.R. at 51a.

Crenshaw's amended complaint was an action in mandamus in which she sought an order from the trial court compelling the District to remit payment of $42,000 and enjoining the District from requiring her to provide services that are outside of her regular day-to-day duties as principal. R.R. at 52a-64a.

The District responded by filing preliminary objections to the amended complaint, asserting that Crenshaw failed to state a violation of the applicable law

2

and failed to state a claim upon which mandamus relief could be granted.  R.R. at 76a-87a.

After a hearing on June 2, 2020, the trial court issued its June 8, 2020 Order sustaining the District's preliminary objections and dismissing the amended complaint.  The trial court reasoned that enforcement of a contract required a majority vote of the District's board and that "enforcement of non-statutory terms of the [Public] School Code [of 1949][1] are not a subject for an order of mandamus." R.R. at 166a.  Specifically, the trial court stated:

> We do not see that a remedy in mandamus lies to compel the board to vote by a majority to approve the extra compensation for [Crenshaw]. Nor do we see that remedy in mandamus lies to force the school district to enter into a new [Administrator Compensation Plan (ACP)] that includes this issue.  The purpose of mandamus is to compel performance of a single ministerial act, it is not usually the appropriate remedy where relief sought is a general course of official conduct or a series of actions. *Germantown [Bus.] [Assoc.] v. City of [Phila.]*, 534 A.2d 553, 555 (Pa. Cmwlth. 1997).
>
> [Crenshaw] has pled no provision of the ACP or her contract that specify she cannot be asked to do duties outside her traditional role. Nor has she cited any specific statutory violations regarding what an ACP must contain.  As [Crenshaw] has identified no provisions of the ACP that have been violated, we therefore enter the following order.
>
> AND NOW, this 8th day of June[] 2020, upon consideration of the [p]reliminary [o]bjections of [the District], Defendant in the above-referenced matter, it is hereby ORDERED that said [p]reliminary [o]bjections are sustained and [Crenshaw's] [a]mended [c]omplaint is DISMISSED WITH PREJUDICE.

R.R. at 166a-67a (capitalization in original).

---

[1] The Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702.

3

Crenshaw now appeals to this Court.[2]

## II.    Arguments

### A. Crenshaw's Arguments

Crenshaw states that she is an Act 93 employee.[3]  "As an Act 93 administrator, [she] is recognized by the Commonwealth as having a different title, function, and role than that of a public school teacher."  Crenshaw's Br. at 5.

Crenshaw asserts that she was promised additional compensation by the District for performing teaching functions, which were outside her role as a school administrator, over a four-year period.  *Id.*  The ACP referenced in the trial court's opinion and order was adopted by the District in June 1990, and renewed and amended each year thereafter.  R.R. at 163a.  During the 2014-2015 school year, the District implemented an MOU with the teachers' union.  R.R. at 56a.  The MOU required the District to hire its own teachers to perform grading duties before looking

---

[2] "[A]ppellate review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law."  *Podolak v. Tobyhanna Twp. Bd. of Supervisors*, 37 A.3d 1283, 1286-87 (Pa. Cmwlth. 2012) (citing *Petty v. Hosp. Serv. Ass'n of Ne. Pa.*, 967 A.2d 439, 443, n.7 (Pa. Cmwlth. 2009)).

[3] Act 93 defines "school administrators" as school employees "below the rank of District Superintendent, Executive Director, Director of Vocational Technical School, Assistant District Superintendent, or Assistant Executive Director, but including the rank of first level supervisor, who by virtue of assigned duties is not in a bargaining unit of public employees."  Section 1164 of the Public School Code, added by the Act of June 29, 1984, P.L. 438, No. 93, *as amended*, 24 P.S. §11-1164 (Act 93).  Act 93 states, in pertinent part:

> (d) School employers shall be required to adopt written administrator compensation plans which shall apply to all eligible school administrators, as provided in this section, and which shall continue in effect until a time specified in the compensation plan, but in no event for less than one school year.

4

outside of the District. *Id.* Teachers fulfilling this role were paid $3,500 for one extra class and $7,000 for two extra classes. Crenshaw's Br. at 9.

Crenshaw asserts that when the District failed to fill open grading teacher positions, she was required to perform teaching-related duties which are outside her scope of duties as a principal. *Id.* She further asserts that it was her understanding that she would be paid for performing these additional services consistent with the aforementioned payment scheme set out in the MOU for teachers. Crenshaw's Br. at 9-10. She contends that her understanding was based on continued communications with the District's chief of human resources, director of compensation and payroll, chief of finance, and solicitor. Crenshaw's Br. at 10. Crenshaw also contends that it was her understanding, from the District's superintendent, that any failure to perform these services would result in disciplinary action against her. *Id.* She asserts that the District's obligation to pay her for these additional services was due beginning in June 2016, but the District has refused to pay her accordingly. Crenshaw's Br. at 12.

Crenshaw argues that a mandamus action is appropriate to enforce provisions of the Public School Code and that this Court has previously permitted a mandamus action for Act 93 employees. Citing *Chapel v. School District of the City of Allentown* (Pa. Cmwlth., No. 750 C.D. 2009, filed December 15, 2009), Crenshaw states that we "found that [the employees in that case] established facts demonstrating their clear legal right to the bonus payment and identified a corresponding duty on the part of the school district to pay that bonus." Crenshaw's Br. at 19. Crenshaw argues that, similarly in the present matter, she "was directed to perform teaching functions outside the scope of her role as an Act 93 administrator[, services] for which the ACP cannot define additional compensation

5

. . . ." Crenshaw's Br. at 20. Crenshaw asserts that "[b]y the [trial court's] rationale, an Act 93 employee can be compelled to function as a teacher without compensation so long as the ACP does not provide otherwise. It renders the legislature's express differentiation of administrators and teachers meaningless." Crenshaw's Br. at 21. Crenshaw maintains that the trial court erred "when opining that the MOU is probative of showing the value of the teaching services but not that [the District] owes [Crenshaw] money for these services (because she is not a teacher subject to the MOU)." *Id.* She contends that "[t]he MOU serves to illustrate not only the value of what is owed but further supports that the services that [Crenshaw] was directed to perform are outside her role as a principal and outside the parameters of the ACP." *Id.*

Crenshaw states that the District and the teachers' union entered into an MOU which provides: "Employees . . . engaged in direct teaching under this program following the training shall be paid at the rate which is financially comparable to the enrichment period structure considering time, program requirements and enrollments." Crenshaw's Br. at 25. Crenshaw argues that the benefits of this agreement were extended to her and that she only learned the District was refusing to pay her after she had performed the extra duties. *Id.*

Again referencing *Chapel*, Crenshaw asserts that Pennsylvania courts have recognized "the appropriateness of a mandamus action for school employees to recover compensation owed." Crenshaw's Br. at 27. In addition, Crenshaw argues that, in *Burns v. Board of Directors of Uniontown Area School District*, 748 A.2d 1263 (Pa. Cmwlth. 2000), a superintendent "successfully brought a mandamus action to compel the board to take specific performance concerning his contract." Crenshaw's Br. at 27. Crenshaw contends that her situation is "a promise of

compensation and denial of payment thereafter." *Id.* Further, she maintains that it was not discretionary with the District's superintendent or board. Although she acknowledges that Pennsylvania's Wage Payment and Collection Law[4] does not apply in the present matter, Crenshaw argues that mandamus is appropriate. Crenshaw contends that "[f]ailing to issue the writ allows the [D]istrict to circumvent the MOU which would otherwise require it to compensate an employee who engages in teaching functions at the direction of the . . . District and in that way to undermine a collectively bargained agreement." Crenshaw's Br. at 28.

In addition, Crenshaw argues that the trial court erred when it determined there was no remedy at law for breach of contract on the basis that "there is no enforceable contract unless by vote of a majority of [the District's board]." Crenshaw's Br. at 29 (citing trial court opinion, R.R. at 164a). Crenshaw contends that, here, it is the District's superintendent, not the board, who is responsible for compensating Act 93 staff. Crenshaw argues she is not obligated to perform teaching duties *gratis* and that the ACP makes it clear that she is paid in exchange for her performance of duties as an administrator. Further, she states that she orally agreed to perform, in exchange for payment, duties that teachers were mandated to perform under their MOU with the District. Crenshaw's Br. at 34. "When the [District] did not follow the parameters of the MOU, the rate of payment [she] was promised for teaching classes was the same rate that the [District] was obligated to pay teachers pursuant to the MOU." *Id.*

---

[4] Wage Payment and Collection Law, Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§260.1-260.45 (relating to the payment of wages or compensation for labor or services; providing for regular pay days; conferring powers and duties upon the Department of Labor and Industry, including powers and duties with respect to the civil collection of wages; providing civil and criminal penalties for violations of the act; providing for their collection and disposition; and providing for additional civil damages).

7

Crenshaw adds that "if it was the obligation of the superintendent to ensure payment of her compensation as promised," and "[i]f the trial court believed the pleading was insufficient on that basis, it is an abuse of discretion to not give leave to amend to further detail the appropriate ministerial act." Crenshaw's Br. at 26.

For all of the preceding reasons, Crenshaw requests that this Court reverse the trial court's Order and remand for issuance of a writ of mandamus or, in the alternative, allow her to file an amended complaint.

## B. The District's Arguments

At the outset, the District notes that the Wage Payment and Collection Law does not apply in this matter because the District is exempt under that law, and that Crenshaw concedes this point. District's Br. at 1.

The District also notes that Crenshaw is an exempt employee under the Fair Labor Standards Act (FLSA)[5] "by virtue of her salary and job duties" and that Crenshaw is "not entitled to any additional compensation or overtime payments under the FLSA beyond her annual salary." *Id*. The District adds that Crenshaw "is one of [the District's] highest paid employees," earning $124,847.72 in 2015-2016, which increased each year until she began earning $132,547.72 in 2018-2019. District's Br. at 1-2.

The District argues that while Crenshaw claims the District has a "ministerial obligation to pay her additional compensation," she "failed to identify any specific legal authority in her amended complaint that imposed this mandatory duty on [the District]." District's Br. at 2. The District further notes that Crenshaw, herself, concedes she is not covered by the collective bargaining agreement between

_____

[5] Fair Labor Standards Act of 1938, 29 U.S.C. §§201-219.

the District and the teachers' union. Further, the District maintains that, by virtue of her position as an administrator, Crenshaw is ineligible to be covered by the collective bargaining agreement, including amendments made to it by an MOU. District's Br. at 3 (referencing Section 1164(a) of the Public School Code, 24 P.S. §11-1164(a)).

The District argues that Crenshaw's original complaint in this matter only stated that she understood she would be paid for the services at issue. She did not name the person who made her the offer or provide any information about whether that person had the authority to bind the District to an agreement, nor did she provide any information relative to when the offer was made, the terms upon which it was conditioned, or the consideration offered. District's Br. at 7. As the District further notes, as an FLSA-exempt employee, Crenshaw is not entitled to more than her annual salary, even if the tasks at issue required her to work beyond 40 hours per week. The District also argues that, even if this Court accepts Crenshaw's "vague claims constitute sufficient allegations as to common law contract formation . . . she still failed to plead facts sufficient to find a valid and enforceable contract with a public school district." District's Br. at 8. "Entering into a valid and enforceable contract with a public school district in Pennsylvania is different than entering into a contract with a private enterprise. Section 427 of the Public School Code provides only that a school board president, together with a school board secretary, can sign a contract legally binding a school district to the terms of a contract." District's Br. at 9 (citing 24 P.S. §4-427). In addition, "the signature of the president and secretary may only bind a school district to a contract after [it] has been approved by a majority vote at a duly advertised public meeting." *Id*. (citing Section 508 of the Public School Code, 24 P.S. §5-508).

9

The District contends that mandamus is unavailable to Crenshaw as a means of compelling it to provide her extra compensation, stating that "Crenshaw asks the Court to rewrite the law of mandamus and order [the District] to vote to create a new policy that provides compensation for Act 93 administrators who perform duties that are outside the scope of their typical job duties." District's Br. at 11-12. The District maintains that, under the Public School Code, the board has discretion of whether to provide extra compensation to employees who perform functions outside of their normal duties, and, in fact, the District has exercised this discretion in regard to teachers represented by the teachers' union. However, in the case of Act 93 administrators, the District has elected not to authorize such additional compensation. District's Br. at 13.

The District argues that "the ACP does not impose a ministerial duty upon [the District] to compensate Crenshaw for performing extra work duties." *Id*. The District does not deny that a writ of mandamus may be issued to compel a school district to comply with its ACP. However, it argues that Crenshaw has not identified anything in the District's ACP that would require it to pay Crenshaw the additional compensation she is seeking. District's Br. at 14.

In regard to Crenshaw's assertion that this Court should permit her to amend her complaint, the District states that, at the close of argument before the trial court, the judge asked counsel for the parties whether they agreed that "if he ruled against Crenshaw, he should not grant [her] [another] opportunity to amend her complaint because the dispute is a pure issue of law, and neither counsel disagreed." District's Br. at 3.

10

Based on the foregoing, the District asserts that this Court should affirm the trial court's June 8, 2020 Order sustaining its preliminary objections and dismissing Crenshaw's amended complaint with prejudice.

### III. Discussion

Crenshaw is an Act 93 employee of the District. Thus, she is not covered by the terms of the collective bargaining agreement and the subsequent MOU between the District and the teachers' union.[6] Crenshaw, as a principal, is not represented by the teachers' union or covered by agreements the union reaches with the District. In this regard, Crenshaw cannot claim the protections offered by the terms of the collective bargaining agreement or the MOU. Accordingly, we reject any arguments Crenshaw makes that rely on same.

Further, there is no dispute that Crenshaw has no recourse under the FLSA or under the Wage Payment and Collection Law. In addition, while Crenshaw is subject to the terms of the ACP, she pled no provision of the ACP that requires her to be paid additional compensation for services performed which were allegedly outside of her duties as principal.

This matter may be reduced to two main issues, namely whether there was a valid agreement between Crenshaw and the District that would have required the District to pay her the $42,000 to which she claims entitlement, and whether Crenshaw demonstrated that mandamus is available to require the District to pay her the $42,000.

---

[6] We note here that the MOU states specifically that it is between the District and its teachers. The MOU states the following: "This [MOU] [is] made by and between [the District] and [the] Pittsburgh Federation of Teachers AFL/CIO . . . ." R.R. at 117a.

11

In *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010), our Supreme Court noted the requirements for a breach of contract claim. Those requirements are: "(1) the existence of a contract, including its essential terms, (2) breach of a duty imposed by the contract, and (3) resultant damages." In the matter before us, Crenshaw asserts it was her *understanding* there was an agreement that she would be compensated for providing teaching related services for the District, but she failed to plead sufficient facts to support the existence of such an agreement. Crenshaw's reliance on *Chapel* is misplaced here because, unlike in *Chapel*, in which the employees established entitlement to a bonus, per the subject ACP, Crenshaw did not establish an entitlement to additional compensation per the District's ACP.

As for Crenshaw's claim about the availability of mandamus as a remedy, we first note that "[m]andamus is an extraordinary writ and is a remedy used to compel performance of a ministerial act or a mandatory duty." *Council of City of Phila. v. Street*, 856 A.2d 893, 896 (Pa. Cmwlth. 2004) (citing *Borough of Plum v. Tresco*, 606 A.2d 951, 953 (Pa. Cmwlth. 1992)). In addition, a writ of mandamus may only be issued to direct a government official to perform an act that he or she has a non-discretionary, ministerial duty to perform. Mandamus will issue "only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy." *Shaler Area Sch. Dist. v. Salakas*, 432 A.2d 165, 168 (Pa. 1981) (citation omitted). Although the District could have entered into an agreement to compensate Crenshaw for the teaching duties she performed, it was not required to do so. Where, as here, Crenshaw has demonstrated no right to relief, in the law or in contract, there is no

duty upon the District, and thus nothing for us to require the District to do. Accordingly, no viable remedy lies in mandamus.

In regard to Crenshaw's assertion that she should have another opportunity to amend her complaint, we disagree. As referenced above, Crenshaw argues that "if it was the obligation of the superintendent to ensure payment of her compensation as promised," and "[i]f the trial court believed the pleading was insufficient on that basis, it is an abuse of discretion to not give leave to amend to further detail the appropriate ministerial act." Crenshaw's Br. at 26. However, Crenshaw had one such opportunity already, and she did not rebut the District's assertion that there was an agreement between the parties, at the trial court level, that there would not be another opportunity to amend. Further, Crenshaw misapprehends the crux of the trial court's decision which was based on the determination that "[Crenshaw] has pled no provision of the ACP or her contract that specify she cannot be asked to do duties outside her traditional role. Nor has she has cited any specific statutory violations regarding what an ACP must contain." R.R. at 166a-67a. The matter of who had the obligation to ensure payment is meaningless, if an obligation to pay was never established in the first place.

### IV. Conclusion

Based on the foregoing, we affirm the trial court's Order sustaining the preliminary objections raised by the District and dismissing Crenshaw's amended complaint with prejudice.

_____
J. ANDREW CROMPTON, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shemeca Crenshaw, Ed.D.,       :
              Appellant      :
                                :
       v.                :   No. 660 C.D. 2020
                                :
Pittsburgh Public Schools    :

## **O R D E R**

      **AND NOW**, this 2nd day of March 2021, the June 8, 2020 Order of the Allegheny County Court of Common Pleas is **AFFIRMED**.

_____
J. ANDREW CROMPTON, Judge