Enrico Anthony ANTONINI

v.

**WESTERN BEAVER AREA SCHOOL DISTRICT and Western Beaver Area School Board, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 4, 2005.

Decided May 13, 2005.

Frank G. Adams, Washington, for appellants.

James J. Ross, Ambridge, for appellee.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

Western Beaver Area School District and School Board (together School Board) appeal from the order of the Court of Common Pleas of Beaver County (trial court). The trial court granted judgment in mandamus for Enrico Anthony Antonini (Superintendent) in the nature of reinstatement. The trial court concluded the with-pay suspension of the Superintendent during an investigation of possible charges was improper. We affirm.

The Superintendent spent his career in education, starting as a teacher. The School Board first hired him as a superintendent in 1994 with a five-year contract. The School Board renewed the contract twice, most recently in July 2004.

In mid-September 2004, the School Board called an executive session. At that session the School Board questioned the Superintendent about the construction sta-

tus of a restroom for a handicapped student. The Superintendent answered questions.

Of particular significance, on September 22, 2004, the School Board held an executive session at which the Board members and their solicitor first met with three individuals and discussed matters affecting the Superintendent without his presence. Trial Ct. Finding of Fact (F.F.) 5. Thereafter, the School Board solicitor asked the Superintendent about the handicapped restroom construction previously discussed. In addition, the Superintendent was questioned about new subjects: the transfer of certain Title I funds to another Title I purpose; the amount of the Title I funds used to reimburse teachers; and, inadequate notice to Board members before interviews of prospective employees. F.F. 6; Reproduced Record (R.R.) at 56a–58a.

The following morning, the solicitor asked the Superintendent to resign. The solicitor advised the Superintendent that if he resigned no charges would be filed and no information about him would be made public. The Superintendent was unaware of the alleged charges and the information to be made public. R.R. 62a–63a.

The School Board scheduled another meeting for the end of September, which it subsequently cancelled because of improper notice. After the meeting cancellation, the School Board held an executive session without the Superintendent. R.R. 64a–66a.

The School Board's next meeting was October 8, 2004. Prior to the meeting, the Superintendent received no statement of charges or reason for the meeting. At this meeting, the School Board approved two resolutions. One was the retention of a lawyer to investigate the Superintendent. F.F. 11. The other was a resolution suspending the Superintendent with pay. *Id.*

Shortly thereafter, the Superintendent filed a complaint in mandamus and motion for preemptory judgment. He sought either reinstatement until the filing of formal charges and hearing specified by statute or award of contractual damages for unilateral termination.

At the trial court hearing, the Superintendent testified and presented testimony from several witnesses. In opposition, the School Board's primary witness was Ronald Young, vice-president of the School Board. Young testified about the "serious charges" being investigating: (1) the delayed restroom construction; (2) Superintendent's authorization of a transfer from Title I salary and benefit funds to staff development funds to use for tuition reimbursement for two teachers studying for principal certificates; (3) the tuition reimbursement for an amount in excess of that authorized in the collective bargaining agreement; and, (4) the Superintendent's failure to give five days notice to School Board members when a prospective employee is interviewed.

The School Board also offered testimony from the Superintendent's secretary regarding an alleged attempt to shred documents, but the School Board's solicitor conceded, "[W]e don't know what was shredded and/or removed." R.R. 136a. The trial court sustained a relevance objection. R.R. 137a.

In its decision, the trial court made the following pertinent findings of fact. The handicapped accessible restroom was completed one week after the beginning of the school year because of a sewer line problem. Other handicapped accessible restrooms were available in the school building. F.F. 7.

The Superintendent authorized expenditure of the Title I funds to provide training for teachers towards certification as princi-

pals. State and federal administrators of Title I did not disapprove the expenditures. F.F. 8. The reimbursement the Superintendent authorized from Title I funds exceeded the amount authorized in the collective bargaining agreement; however, Title I regulations authorized the reimbursement amounts. F.F. 10.

The Superintendent gave School Board members five days notice of interviews with prospective employees, but one member did not read the notice within the five day period. F.F. 9.

The trial court granted judgment in mandamus and ordered the School Board to reinstate the Superintendent. The trial court concluded none of the complaints regarding the Superintendent constituted such "serious misconduct" as would excuse compliance with Section 1080 of the Public School Code of 1949 (School Code).[1] On this basis the trial court distinguished our Supreme Court's recent decision in *Burger v. Board of Sch. Dir. of McGuffey Sch. Dist.*, 576 Pa. 574, 839 A.2d 1055 (2003). In addition, the trial court concluded the School Board did not adequately observe the Superintendent's procedural due process rights.[2]

On appeal[3] the Board raises four challenges to the trial court's decision. First, peremptory judgment in mandamus is inappropriate as the Superintendent did not establish a clear right to relief and the lack of an adequate alternative remedy. Second, the trial court erred when it heard evidence on and decided the underlying claims of misconduct. Third, the trial court erred in determining the Superintendent's procedural due process rights were violated. Fourth, the trial court erred when it precluded the testimony of the Superintendent's secretary concerning alleged document shredding. We address each issue in turn.

## I.

 Mandamus is an extraordinary writ which will issue to compel the performance of a ministerial act or mandatory duty. *Borough of Plum v. Tresco*, 606 A.2d 951 (Pa.Cmwlth.1992). In order to prevail in a mandamus action there must be a clear legal right in the petitioner for performance of a ministerial act or mandatory duty, a corresponding duty in the respondent to perform the ministerial act or mandatory duty, and no other appropriate remedy available. *Equitable Gas Co. v. City of Pittsburgh*, 507 Pa. 53, 488 A.2d 270 (1985).

### A. Clear Right to Relief

In arguing mandamus is inappropriate because there is no clear right to relief, the School Board relies on our Supreme

---

1. Act of March 10, 1949, P.L. 30, Section 1080, *as amended*, 24 P.S. § 10–1080. Section 1080 of the School Code provides:

 District superintendents and assistant district superintendents may be removed from office, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as each member of the board of school directors.

2. After issuing its decision, the trial court granted the Board's application for automatic supersedeas. The trial court vacated the automatic supersedeas in early November. It made Superintendent's reinstatement subject to several conditions. R.R. 252a. This Court subsequently denied the District's application for reinstatement of the automatic supersedeas and adopted the trial court's opinion on the issue.

3. The Court's review of a case involving judgment in mandamus is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Burns. v. Uniontown Bd. of Dir.*, 748 A.2d 1263, 1265 n. 9 (Pa.Cmwlth.2000).

Court's recent decision in *Burger*. That case involved a school board's suspension of a superintendent accused of sexually harassing his secretary and retaliating against her when rebuffed. The suspension was without pay after an investigation while the school district prepared for formal termination. In its decision affirming the suspension, our Supreme Court stated, *Burger* at 584, 839 A.2d at 1061 (emphasis added):

> In this regard [clear-right-to-relief prerequisite to mandamus], we agree with the Commonwealth Court's majority that *the School Code's removal provision pertaining to superintendents does not divest school boards of their implied authority to suspend such officials accused of serious misconduct,* even without pay and benefits, within the constraints of procedural due process.

Based on *Burger,* the School Board argues it has a managerial prerogative to suspend a superintendent with pay while investigating allegations of serious misconduct.

We agree with the School Board's general statement of the law; nevertheless, we disagree that the general statement of law applies to the facts here. In particular, we disagree that the alleged misconduct qualifies as "serious" within the Supreme Court's holding in *Burger*. We need not further define the phrase "serious misconduct," which the Supreme Court used throughout its opinion in *Burger*. It is sufficient for present purposes to contrast the nature of misconduct alleged in *Burger* with that alleged here.

*Burger* involved allegations of intentional, repeated sexual harassment and retaliatory conduct by the superintendent; however, the allegations here do not involve intentional, repeated, offensive conduct by the Superintendent. Thus, the handicapped restroom issue and the five-day notice issue embrace acts or omissions by others. The Title I funds issues involve disputes about which rules prevail and whose advice should be followed. In sum, the misconduct alleged here is of a different kind than that in *Burger*. The trial court correctly drew this distinction.

■ In so holding, we specifically reject the School Board's assumption that its "managerial prerogative" to suspend with pay is generally available. That is not the holding in *Burger*. Rather, resort to procedures beyond those specified in the School Code is the exception rather than the rule, reserved for allegations of "serious misconduct." It is the seriousness of the misconduct alleged that forms the necessity for the implied power.

There is no dispute that the Superintendent's suspension did not conform to the procedures in Section 1080 of the School Code. Based on the foregoing discussion, we conclude the Superintendent established a clear right to be treated in accordance with those explicit statutory provisions.

## B. Adequacy of Remedy

The School Board also argues judgment in mandamus is inappropriate because the Superintendent was not harmed by the interim with-pay suspension and because an adequate remedy at law exists. As to the latter point, the Superintendent could appeal an adverse decision after termination to the trial court.

Although the Supreme Court affirmed this Court in *Burger,* it did not do so on the adequacy-of-remedy issue. Rather, the Supreme Court said:

> On the mandamus question, the Commonwealth Court's decision appears to implement a categorical rule that the availability of a post-termination appeal necessarily constitutes an adequate remedy with respect to a prior, pre-hearing

deprivation in the nature of an interim, uncompensated suspension of a public employee. We believe, however, the adequacy-of-remedy question as applied to such a deprivation requires a more fact-dependent inquiry, as well as a more circumspect approach on the part of the reviewing court, particularly in view of the impact on the employee's livelihood. Relevant factors, (in addition to the availability of judicial review following the entry of a final, adverse order with respect to the removal), should logically include, *inter alia,* the position held by the public employee; the character of the alleged conduct in relation to that position and its potential impact on the public trust; the interim procedures afforded to the employee; the extent and length of the deprivation; and any other circumstances evidencing excessive hardship. It should also be noted that it remains the plaintiff's burden to establish the inadequacy of any available remedies as well as the other requisites to mandamus relief.

576 Pa. at 583–84, 839 A.2d at 1060–61 (citations omitted).

We follow our Supreme Court's guidance on this issue by addressing the relevant factors. Regarding availability of judicial review, such review is available after a final order on termination. It is unclear what review is available if the School Board does not terminate the Superintendent.

As to the position, superintendent, it is treated specially in the School Code. We discussed the special aspects of this position at length in *Burns v. Uniontown Area Sch. Dist.,* 748 A.2d 1263, 1266–67 (Pa. Cmwlth.2000), where we wrote (footnotes omitted):

A superintendent does not have tenure like the professional employees, e.g., principals, teachers, etc. A superinten-

dent is not protected by collective bargaining under Act 195 nor is he included under Act 93, as administrators are, with certain rights to meet and discuss. Superintendents have, however, obviously been given select consideration by the Legislature in the School Code, which gives them unique status as a non-voting board member as well as being the chief executive officer of the District. Long term job security for that office is provided by mandating a minimum contract length of at least three years, by restricting removal to four specific reasons, by forcing the school boards to make a decision on retention at least five months before the expiration of the contract....

. . . .

. . . .

Further, the School Code imposes not only rights but also specific duties upon an elected district superintendent including, but not limited to, having a seat on the school board and the ability to speak to the school board on all matters, albeit without a vote, further evidencing the importance for each school district to elect a qualified superintendent in the last year of the contract. The Legislature clearly intends that the unpaid citizen school directors shall have a qualified superintendent, who is a commissioned officer of the Commonwealth of Pennsylvania, present to provide the directors, as well as the administrators, teachers, other employees and students, with professional executive and pedagogical leadership, direction and advice regardless of the vagaries inherent in the elections of board members. *See* Sections 1001 and 1003 of the School Code, 24 P.S. §§ 10–1001, 10–1003.

Regarding the character of the alleged conduct, as found by the trial court it is

not so serious as to necessitate procedures beyond those specified in the School Code. By implication, the conduct does not immediately threaten the public trust.

As to procedures, the trial court determined the interim procedures were inadequate, as is more fully discussed later.

Regarding hardship, the extent of deprivation was partial. That is, the Superintendent continued to receive his pay, but the School Board challenged his right to continue performing statutory duties. The threatened length of the deprivation was indefinite. Further impact on the Superintendent's livelihood was not explored by the parties.

In *Burns*, this Court recognized the adequacy of legal remedies to repair breach of contract or recover monetary damages. The Court further recognized, however, the lack of statutory remedies to enforce the School Code's provisions regarding election, setting compensation and enforcement of the duties of a duly elected superintendent. *Id.* at 1269.

Considering all the foregoing, we conclude that the Superintendent's other remedies are not adequate here, so that he may proceed in mandamus. Indefinite suspension from performance of statutory duties because of the type of misconduct alleged here, without prior specification of concerns, is not adequately remedied by appeal if the Superintendent is terminated in the future.

## II.

The School Board contends the trial court erred in allowing testimony and making determinations on the ultimate validity of the allegations against the Superintendent. Where, as here, there is a suspension during an investigation of superintendent misconduct, the trial court's inquiry should be limited to determining whether the allegations fall within the statutory causes for removal, it argues.

■ The School Board's challenge to the scope of the hearing lacks merit. Testimony from the Superintendent regarding his understanding of the School Board's concerns was received without objection. Further, the School Board's solicitor offered testimony regarding the reasons for the Superintendent's suspension. R.R. at 70a–80a. The School Board cannot now complain that the trial court acted on information submitted to it.

As to the rest of its argument on this issue, the School Board mischaracterizes the trial court's determination. The trial court clearly determined the alleged misconduct was not "serious" within the Supreme Court's holding in *Burger*. As a consequence, the School Board was required to follow the statutory procedure for removing the Superintendent and could not rely on a necessarily implied power to suspend. The trial court was not asked to decide, and did not decide, the ultimate validity of the allegations.

## III.

■ The School Board challenges the determination that the Superintendent was not provided with procedural due process. The School Board argues that because the Superintendent was suspended with pay, he was not entitled to procedural due process.[4] Alternatively, the School Board

4. Generally citing *Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 596–97 (11th Cir.1997) (school superintendent does not have a constitutional right to actually hold his position and execute the duties of the office),

our Supreme Court wondered whether a public official's due process interest extends beyond the economic benefits of that position. *Burger*, 576 Pa. at 585 n. 12, 839 A.2d at 1062, n. 12.

claims the Superintendent received all the process he was due at its September 22 executive session when he was given an opportunity to explain his position on each allegation.

Because we agree with the trial court that mandamus is available to challenge a superintendent's suspension for conduct that is not "serious" within the holding in *Burger,* it is not necessary for us to resolve the interesting issue of whether any process is due for a suspension with pay. We do not answer that question now.

However, one of the relevant factors in the Supreme Court's adequacy-of-remedy analysis is the interim procedures afforded. Therefore, some review of the trial court's decision on this point is appropriate here.

In *Burger,* the Supreme Court wrote:

Although we hold that a school board may implement interim suspensions with or without pay in appropriate circumstances in the face of allegations of serious misconduct on the part of a superintendent, *we agree with the Commonwealth Court that a school board must insure that procedural due process rights are observed when implementing such measures* .... We note only that due process is a flexible concept and, thus, requires procedural protections as each particular situation demands ... and that certainly prolonged impact on livelihood interests would be a weighty factor in the assessment.

576 Pa. at 585, 839 A.2d at 1062 (emphasis added, footnotes, citations omitted).

■ In *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held that where an individual has a property right in employment, he may be suspended prior to a full due process removal hearing, but only after he has been afforded notice of the charges and an opportunity to respond. The very limited pretermination hearing "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46. The process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. *Id.* at 546; *accord, Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (suspension without pay of policeman at East Stroudsburg University after arrest on felony drug charges).

■ Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case. *Gniotek v. City of Philadelphia,* 808 F.2d 241 (3rd Cir. 1986). However, advance notice is not required. *Id.* " '[T]he timing and content of notice ... will depend on appropriate accommodation of the competing interests involved.' " *Id.* at 244, quoting *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

Here, the Superintendent can establish a legitimate expectation of continued employment both through contract and through statute. *See Short v. Borough of Lawrenceville,* 548 Pa. 265, 696 A.2d 1158 (1997). Therefore, if process is due at all, the *Loudermill* requirements must be satisfied.

The trial court determined (Trial Ct. Op. at 6):

Here, there was neither adequate notice nor a meaningful opportunity to be heard. [Superintendent] was not informed in advance of the September 22, 2004 meeting as to what items were to

be brought up. He justifiably thought [the meeting] was to discuss the handicapped restroom. However, three additional matters were brought up by the School Board, some of which were discussed with three other persons outside [Superintendent's] hearing and without his participation. He had no opportunity to prepare to discuss the additional matters and, of course, could not know what information was presented to the Board by the other three persons.

We agree with the trial court that the *Loudermill* requirements for notice were not satisfied here. In particular, the Superintendent did not receive an explanation of the School Board's evidence against him. This deficiency could impair the Superintendent's ability to determine what facts might be presented in mitigation of or in denial of the charges. *See Gniotek*, 808 F.2d at 244. We therefore share the trial court's concern that the process was not a sufficient initial check against a mistaken decision involving a position given special statutory treatment.

## IV.

■ Finally, the School Board challenges the trial court's refusal to receive evidence of the Superintendent's shredding of documents. The trial court sustained a relevance objection when the School Board could make no offer as to what documents were involved.

■ The admission of evidence is committed to the sound discretion of a trial court. *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980). A decision on evidence admissibility can only be reversed for abuse of that discretion. *Id.*

A trial court may exclude evidence if its probative value is outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, or by consid-

erations of undue delay or waste of time. *See* Pa. R.E. 403. The best that can be said of the rejected evidence here is that any probative value was outweighed by confusion of the issues. The trial court's preclusion of a fishing expedition was not an abuse of discretion.

Accordingly, we affirm the trial court's decision.

### *ORDER*

AND NOW, this 13th day of May, 2005, the decision of the Court of Common Pleas of Beaver County in the above-captioned matter is **AFFIRMED**.