Larry WASLOW, Liquidating Supervisor of The National Organization for Children, Inc., f.d.b.a. T.E.A.C.H., f.d.b.a. The Einstein Academy Charter School, Petitioner

v.

PENNSYLVANIA DEPARTMENT OF EDUCATION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2009.

Decided Oct. 23, 2009.

Danielle M. Weiss, Philadelphia, for petitioner.

Karen S. Feuchtenberger, Senior Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, FRIEDMAN, Senior Judge, and QUIGLEY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Before this court are the preliminary objections in the nature of a demurrer filed by the Pennsylvania Department of Education (Department) in response to the Petition for Review (Petition) filed by Larry Waslow, Liquidating Supervisor of the National Organization for Children, Inc., f.d.b.a. T.E.A.C.H., f.d.b.a. The Einstein Academy Charter School (Einstein). In its Petition, Einstein requests a writ of mandamus or a declaratory judgment in connection with Einstein's claims against the Department for reimbursement of special education services provided by Einstein. We overrule the preliminary objections.

During the 2001–2002 and 2002–2003 academic years, Einstein operated as a cyber charter school and provided education services to both regular and special education students from various school districts. (Petition, ¶¶ 4–5.) Pursuant to section 1725–A of the Charter School Law[1] (CSL), 24 P.S. § 17–1725–A, a school district that has any resident students enrolled in a charter school must pay the charter school for each enrolled student. Section 1725–A(a) of the CSL sets forth separate formulas to determine the amounts to be paid for regular education students enrolled in the charter school (General Education Funds) and special education students en-

---

1. Act of March 10, 1949, P.L. 30, *as amended,* added by section 1 of the Act of June 19, 1997, P.L. 225, *as amended,* 24 P.S. § 17–1725–A.

rolled in the charter school (Special Education Funds). 24 P.S. § 17–1725–A(a). A prerequisite for payment of Special Education Funds from a school district is that the charter school provide an Individualized Education Plan (IEP) for each special education student invoiced. If a school district fails to make a required payment to the charter school, the Secretary of Education (Secretary), after receiving documentation from the charter school, deducts the estimated amount owed from any State payments due to the non-paying school district and gives that payment to the charter school. Section 1725–A(a)(5) of the CSL, 24 P.S. § 17–1725–A(a)(5). (Petition, ¶¶ 7–11, 19.) In August 2002, the Department issued its "Guidelines for Post–Withholding Reconciliation Process under 24 P.S. § 17–1725–A(a)," which established a reconciliation process for the limited purpose of ensuring that the Secretary withheld the proper sums from school districts. *See Boyertown Area School District v. Department of Education,* 861 A.2d 418 (Pa.Cmwlth.2004). The affected school district has thirty days to challenge the accuracy of the Secretary's deduction and must be provided an opportunity to be heard on the matter. Section 1725–A(a)(6) of the CSL, 24 P.S. § 17–1725–A(a)(6).

■ Einstein encountered a cash infusion problem, allegedly due, in part, to the failure of resident school districts to pay for education services rendered by Einstein. Einstein alleged that, as a result, it was unable to timely provide the IEPs required by law for Einstein's qualifying special education students. (Petition, ¶¶ 6, 20–21.) Thus, beginning in June 2001, Einstein invoiced the various school districts only for General Education Funds, not for any additional Special Education Funds. (Petition, ¶¶ 12–13, 17–18.) The school districts failed to submit payment, and Einstein sought payment from the Department, which, after completion of the CSL's reconciliation process, paid some, but not all, of the General Education Funds invoiced by Einstein. (Petition, ¶¶ 14–16.) Einstein lost its charter effective June 30, 2003. However, Einstein acquired funds pursuant to a 2002 agreement with the Department,[2] and, through March 2006, Einstein provided IEPs and compensatory education services to formerly enrolled special education students.[3] (Petition, ¶¶ 22–25.)

On March 2, 2006, Einstein filed for Chapter 11 Bankruptcy, and by letter dated December 27, 2006, the creditors' committee invoiced the Department for the cost of the IEPs and compensatory education provided to Einstein's former special education students;[4] the Department

---

**2.** This 2002 agreement is referenced frequently by both parties; in fact, Einstein claims that it is due funds for education services rendered in accordance with the 2002 agreement with the Department. (Petition, ¶ 32.) However, the 2002 agreement is not contained in the record, and, therefore, none of the claims made regarding that document can be verified.

**3.** Compensatory education is an equitable remedy appropriately awarded to qualifying students that have been denied the special education services necessary to provide them with the free appropriate public education required by law. *See M.C. ex rel. J.C. v. Cen-*

*tral Regional School District,* 81 F.3d 389 (3d Cir.), *cert. denied,* 519 U.S. 866, 117 S.Ct. 176, 136 L.Ed.2d 116 (1996).

**4.** In the December 27, 2006, letter, counsel for the committee states, *inter alia,* that Einstein provided compensatory education services to 166 identified eligible former students pursuant to the 2002 agreement between Einstein and the Department, but Einstein had not been paid any of the approximately $2.4 million in Special Education Funds owed on account of these students. According to the letter, the process implemented pursuant to the 2002 agreement replaced the normal statutory payment mechanism and satisfied the

did not remit payment. (Petition, ¶¶ 27–28.) On January 24, 2008, liquidators for Einstein sent invoices to the various school districts in which the special education students were resident, seeking the Special Education Funds; again, the subsidies were not paid. (Petition, ¶¶ 29–30; Ex. B.) On February 29, 2008, the Department was again invoiced, but it refused to remit payment and further refused to allow Einstein to invoke the administrative process to receive a hearing regarding the Department's refusal to pay. (Petition, ¶ 31.)

On March 3, 2008, Einstein filed a petition for review with this court, asking that we order the Department to pay the special education subsidies owed to Einstein.[5] After the Department filed preliminary objections asserting that Einstein had failed to exhaust its administrative remedies,

Einstein withdrew its petition and initiated administrative proceedings in accordance with the procedures described in the Department's preliminary objections and in a March 12, 2008, letter from the Department.[6] The Department responded by raising various legal bars to Einstein's recovery, and the parties began a series of discussions regarding the merits of their respective legal arguments. (Petition, ¶¶ 34–44; Ex. C, D, E, F, G.)

Ultimately, on February 17, 2009, Einstein received a letter from the Secretary advising Einstein that the Department would not hear Einstein's claims for several reasons.[7] In concluding, the letter specifically stated that because Einstein has no rights affected by the letter, "this letter does not constitute an adjudication." (Pe-

requirement to provide an IEP. (Petition, Ex. A.) By letter dated January 26, 2007, the Department disputed the committee's characterization of the 2002 agreement and denied that Einstein was entitled to any money beyond that which Einstein had already received after the 2001–2002 and 2002–2003 reconciliation process. (Preliminary objections, Ex. 1.)

5. Applicable bankruptcy laws prevented Einstein from filing legal proceedings or initiating any legal process to collect the fees due and owing to it pursuant to the CSL until two years after the bankruptcy filing. (Petition, ¶ 33.) On March 3, 2008, Einstein's liquidator also sent a letter and "invoice" to the Secretary seeking $1,404,064.12 that Einstein claimed was owed to Einstein by approximately seventy-nine school districts for unpaid Special Education Funds for the 2001–2002 and/or 2002–2003 school years. (See preliminary objections, Ex. 2.)

6. The March 12, 2008, letter from Barbara Nelson, Chief of the Department's Division of Subsidy Data and Administration, responded to Einstein's March 3, 2008, request for Special Education Funds and advised Einstein that it had not provided appropriate documentation required by the Department and that it needed to submit a reconciliation re-

port in order for the Department to evaluate Einstein's claims. The letter also advised Einstein of how to properly participate in the reconciliation process described in the CSL. (See Petition, Ex. C.) On October 24, 2008, Einstein's liquidators provided the reconciliation report to the Department and requested the Department to forward the Special Education Funds. (See Petition, Ex. D.)

7. In the February 17, 2009, letter, the Secretary stated that by submitting the reconciliation documents, Einstein sought a second opportunity to go through an administrative process that already was completed. The Secretary concluded that there was no legal basis for the Department to entertain Einstein's request to supplement claims that had been previously made and finally decided. The Secretary also maintained that Einstein was not entitled to reimbursement from the school districts for the costs associated with Einstein's provision of an equitable remedy and could not receive payment as if it had met its legal obligations. Moreover, the Secretary asserted that, even if Einstein were entitled to Special Education Funds, it was only entitled to those funds for the seven special education students identified in the 2001–2002 and 2002–2003 reconciliation process and had waived its right to identify others at a later date. (Petition, Ex. H.)

tition, ¶ 45; Ex. H.) Einstein now alleges that, by this letter, the Department denied Einstein its right to due process by simultaneously denying Einstein's claims without providing an opportunity to be heard and by refusing to issue a final adjudication upon which Einstein may appeal, leaving Einstein with no remedy. (Petition, ¶ 46.)

On March 13, 2009, Einstein filed its Petition. In Count I, Einstein seeks a writ of mandamus ordering the Department to either (a) enter a final adjudication based upon Einstein's submissions or (b) assign a date for a hearing so that the merits of Einstein's claims can be finally adjudicated. (Petition, ¶¶ 47–50.) Alternatively, in Count II, Einstein requests a declaratory judgment, declaring that the Secretary's February 17, 2009, letter constitutes a final adjudication for purposes of appeal and granting Einstein thirty days to file an appeal from that adjudication. (Petition, ¶¶ 51–55.)

The Department has filed preliminary objections in the nature of a demurrer, asserting that: (1) Einstein previously participated in and completed the reconciliation process for the 2001–2002 and 2002–2003 school years; (2) Einstein already pursued, through the reconciliation process, any and all rights Einstein had against school districts for the payment of funds pursuant to the CSL; (3) Einstein is seeking a second opportunity to go through an administrative process that already has been completed; and (4) Einstein's provision of compensatory education does not allow Einstein to reopen

the reconciliation process to receive additional funds from the school districts. (Preliminary objections, ¶ 33.) The Department alleges that because Einstein has been provided with all of its due process rights and now has no rights that need to be remedied, it cannot state a claim for a writ of mandamus or declaratory judgment. (Preliminary objections, ¶¶ 34–55, 56–63.) Einstein filed an answer, and the preliminary objections are now before us for disposition.[8]

Initially, we point out that the Department's preliminary objections, as well as the supporting arguments in its brief, focus on the merits of Einstein's underlying right to the claimed reimbursement for compensatory special education services rather than whether the Secretary's letter constitutes an adjudication or whether mandamus is appropriate. However, the only issue raised in Einstein's Petition is its claimed right to an order directing the Secretary to adjudicate the merits or, alternatively, an order recognizing that the Secretary already has rendered such an adjudication. Thus, the facts and legal conclusions relating to whether Einstein ultimately is entitled to reimbursement are not properly before us at this stage of the proceedings.

### 1) Writ of Mandamus

Mandamus is an extraordinary writ which will issue to compel the performance of a ministerial act or mandatory duty. *Antonini v. Western Beaver Area School District*, 874 A.2d 679 (Pa.Cmwlth. 2005). In order to prevail in a mandamus

---

8. In reviewing preliminary objections in the nature of a demurrer, we must accept as true all well-pleaded facts, which are material and relevant, as well as any reasonable inferences deducible therefrom. *Commonwealth v. Percudani*, 825 A.2d 743 (Pa.Cmwlth.2003). In deciding whether to sustain a demurrer, this Court is not required to accept as true legal conclusions, unwarranted factual inferences, allegations that constitute argument, or mere opinion. *Id.* Moreover, a demurrer will not be sustained unless the Court finds that on the face of the pleading the law states with certainty that no recovery is possible. *Id.* Furthermore, any doubts are to be resolved against sustaining the demurrer. *Id.*

action, the petitioner must demonstrate: a clear legal right in the petitioner for performance of a ministerial act or mandatory duty; a corresponding duty in the respondent to perform the ministerial act or mandatory duty; and the absence of any other appropriate or adequate remedy. *Id.*

The Department argues that Einstein's request for mandamus is inappropriate because Einstein has no clear right to relief. Relying on *Boyertown Area School District v. Pennsylvania Department of Education*, 797 A.2d 421 (Pa.Cmwlth.), *appeal denied*, 572 Pa. 710, 813 A.2d 845 (2002), the Department asserts that the Secretary's performance of his duty pursuant to section 1725–A(a)(5) of the CSL is not a ministerial act but, instead, requires an exercise of discretion in that the Secretary must evaluate the documentation provided by a charter school to determine whether it is appropriate. The Department further contends that the Secretary has no mandatory duty under section 1725–A(a)(5) to enter a final adjudication on Einstein's 2008 claims or to provide Einstein with a hearing on the merits of those claims because Einstein already had those claims adjudicated five years earlier.[9] Thus, the Department maintains that Einstein's mandamus claim should be dismissed with prejudice.

Einstein acknowledges that the Secretary's decision-making responsibilities under section 1725–A(a)(5) involve the exercise of discretion. However, Einstein points out that mandamus may be used to compel a public officer to act in accordance with his duties and exercise that discretion, although it cannot be used to compel a particular result. *Tanenbaum v. D'Ascenzo*, 356 Pa. 260, 51 A.2d 757 (1947). Einstein reminds us that, in the Petition,

Einstein does not ask this court to order a particular outcome; it asks only that we compel the Secretary to issue a formal adjudication of Einstein's claims under the CSL. In fact, Einstein contends that, because it must exhaust its administrative remedies before seeking relief from this court, *Pennsylvania Pharmacists Association v. Department of Public Welfare*, 733 A.2d 666 (Pa.Cmwlth.1999), it has a clear legal right to an agency adjudication or else it will be left without a remedy. In other words, Einstein does not seek a particular result from the process; it only seeks access to the process.

Because we agree that Einstein is entitled to an adjudication of its claims, we overrule the Department's preliminary objection to Count I. However, we note that this essentially is a moot point because, as explained below, the Secretary has exercised his discretion and has issued an adjudication in this case.

### 2) Declaratory Judgment

 The purpose of the Declaratory Judgments Act (Act), 42 Pa.C.S. §§ 7531–7541, is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and the Act is to be liberally construed and administered. 42 Pa.C.S. § 7541(a). However, a party seeking a declaratory judgment must allege an interest which is direct, substantial and present, and must demonstrate the existence of an actual controversy related to the invasion or threatened invasion of its legal rights. *Bowen v. Mount Joy Township*, 165 Pa. Cmwlth. 101, 644 A.2d 818,, *appeal denied*, 539 Pa. 682, 652 A.2d 1326 (1994). Declaratory judgment must not be employed to determine rights in anticipation of events

---

9. We note that the Department does not argue that the Secretary has no duty to adjudicate claims under section 1725–A(a)(5) in general, only that he has no duty to adjudicate this particular claim.

that may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic. *Gulnac by Gulnac v. South Butler County School District*, 526 Pa. 483, 587 A.2d 699 (1991).

In responding to Einstein's request for declaratory judgment, the Department's preliminary objection does not address whether the Secretary's February 17, 2009, letter constitutes an adjudication of Einstein's claims for reimbursement. Instead, applying circular logic, the Department contends that there can be no adjudication because Einstein has no legal right to the additional reimbursement it seeks. Because it already has decided that Einstein's claims for reimbursement are entirely without merit, the Department contends that no actual controversy now exists relative to the invasion or threatened invasion of Einstein's legal rights.[10]

However, the actual controversy here is the dispute concerning the legal significance of the Secretary's February 17, 2009, letter, which, in turn, is related to the threatened invasion of Einstein's right to an adjudication. Moreover, the Department's response is not relevant to the question raised in Einstein's Petition, i.e., whether the Secretary's February 17, 2009, letter explaining that Einstein has no entitlement to reimbursement for compensatory special education services constituted an adjudication for purposes of appeal.

■■ An administrative adjudication is defined at section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101 as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." When an agency's decision or refusal to act leaves a complainant with no other forum in which to assert his or her rights, privileges, or immunities, the agency's act is an adjudication. *Wortman v. Philadelphia Commission on Human Relations*, 139 Pa. Cmwlth. 616, 591 A.2d 331 (1991). A letter from an agency may qualify as an adjudication so long as the letter is the agency's final order, decree, decision, determination, or ruling and such decision impacts on a person's personal or property rights, privileges, immunities, duties, liabilities, or obligations. *Id.*

Here, Einstein has averred in its Petition that it has been denied due process in the form of the Department's refusal to adjudicate Einstein's 2008 claim for reimbursement of fees under the CSL. The Department counters that, because Einstein already has been paid all the amounts due, it need not and will not adjudicate Einstein's subsequent claim for additional payments. Thus, there is an actual controversy over whether Einstein is entitled to access the process by which it will be determined what, if anything, is owed to Einstein under the statute. In this case, the Secretary's February 17, 2009, letter dismissed Einstein's claims for reimbursement, provided a rationale for that action and, by stating that the letter was not an adjudication, attempted to permanently foreclose Einstein's opportunity to further assert its alleged legal rights.

The Secretary's February 17, 2009, letter effectively denies Einstein reimburse-

---

**10.** At this point, we observe that the Department cites no authority for its implicit assertion that a charter school is forever barred from amending claims made and adjudicated in prior years. Similarly, Einstein cites no authority that would require reimbursement for compensatory education services provided to students who were denied those services while previously enrolled at Einstein.

ment as it also denies Einstein an opportunity for further consideration of its claims. We conclude, therefore, that Einstein has set forth facts sufficient to establish that the letter constitutes an adjudication within the meaning of 2 Pa.C.S. § 101 because it represents the Secretary's final decision impacting on Einstein's rights under the CSL. For this reason, we overrule the Department's preliminary objection to Count II of the Petition.

Judge BUTLER did not participate in the decision in this case.

### ORDER

AND NOW, this 23rd day of October, 2009, the preliminary objections filed by the Pennsylvania Department of Education (Department) are hereby overruled. We direct the Department to file an answer to the Petition for Review within twenty days from the date of this order.