OPINION BY
JUDGE McCullough [1]
The Board of School Directors (the School Board)[2] of the Susquehanna Township School District (District) appeal from the November 5, 2014 order of the Court of Common Pleas of Dauphin County (trial court), which essentially granted Dr. Susan Kegerise’s (Dr. Kegerise) mandamus Complaint and directed the School Board to reinstate her as the superintendent of the District.
Facts and Procedural History
In January 2010, Dr. Kegerise was hired as the superintendent of the District. In January 2013, the School Board voted to extend her contract and, in April 2013, a majority of the School Board ratified the finalized contract, which was set to expire on June 30, 2017.
On March 25, 2014, Dr. Kegerise advised the School Board that she was currently under medical care and, per her physician’s instruction, would be out of work through April 21, 2014.[3] (Reproduced Record (R.R.) at 578a-79a.)
On April 16, 2014, in response to several letters from Dr. Kegerise’s counsel to the District alleging that she had been con *933 structively discharged, the District’s counsel responded with a letter stating that:
Dr. Kegerise is and remains the Superintendent of Schools at Susquehanna Township School District pursuant to the contract between she and the Board. Her recent absence from work was based on a physician’s note received from Dr. Kegerise. Her time away from the District since that day has been recorded as sick leave derived from Dr. Kegerise’s pre-existing sick leave accumulation.
⅜ ⅜ ⅜
Finally, the District understands that Dr. Kegerise’s current physician’s note indicates that she is precluded from working until April 21, 2014. If she is cleared to return to work, then the District hopes and expects her to return to her duties as Superintendent. If she is not, the District will continue to debit her sick leave time and continue to process her workers!’] compensation claim.
(R.R. at 71a-72a.)
On April 17, 2014, Dr. Kegerise filed a complaint against the District and individual School Board members (federal complaint) in the United States District Court for the Middle District of Pennsylvania, alleging, inter alia, that the District had caused her working conditions to become so intolerable that it constituted a constructive discharge, although she acknowledged that she had not been formally terminated. As part of her federal complaint, Dr. Kegerise submitted a verification, affirming that the statements contained therein were true and correct to the best of her knowledge. (R.R. at 74a-116a.)
On April 21, 2014, the School Board met in a properly advertised public session, amended its agenda mid-meeting to add a motion to accept the resignation of Dr. Kegerise, and voted to approve the motion to “[a]ccept the resignation of Dr. Kegerise as superintendent that is implicit with the term ‘constructive discharge,[’] effective April 17, 2014.” (R.R. at 252a.) The motion passed with five affirmative votes, zero objections, and three abstentions. The abstaining School Board members cited a lack of information for their non-participation. Dr. Kegerise was not present at the meeting. (R.R. at 50a-51a, 249a-55a.)
By letter dated April 22, 2014, the District’s counsel advised Dr. Kegerise’s counsel that the School Board had voted to formally accept Dr. Kegerise’s resignation, effective April 17, 2014, based upon her filing of the federal complaint. The letter also stated that Dr. Kegerise had breached her employment contract because she failed to provide sixty days’ notice of her resignation. Accordingly, Dr. Kegerise’s pay, benefits, health care, emoluments, and any terms of her contract ceased to be effective on April 17, 2014. (R.R. at 25a.)
On April 24, 2014, Dr. Kegerise filed a complaint in mandamus in the trial court and an emergency motion for peremptory judgment pursuant to Pennsylvania Rule of Civil Procedure No. 1098, requesting that it order the School Board to reinstate her and compensate her from April 17, 2014, to the date of reinstatement. The School Board filed preliminary objections to the complaint and a response opposing Dr. Kegerise’s emergency motion. (R.R. at 19a-30a.)
At the parties’ request, the trial court preliminarily determined whether an emergency existed sufficient to have Dr. Kegerise’s complaint considered on an expedited basis and, on May 2, 2014, the parties filed joint stipulations of fact. By order dated May 14, 2014, the trial court determined that the matter did not constitute an emergency. (R.R. at 48a, 261a.)
On May 16, 2014, Dr. Kegerise filed an amended complaint in mandamus, seeking *934 reinstatement and compensation. The School Board filed preliminary objections to Dr. Kegerise’s amended complaint, arguing that her claim must fail because she does not have a clear legal right to the retraction of the School Board’s acceptance of her resignation and she has an adequate remedy at law. By order dated June 20, 2014, the trial court denied the School Board’s preliminary objections. Thereafter, the School Board filed an answer and new matter, alleging that Dr. Kegerise was estopped from asserting that she did not resign because she submitted a signed verification with her federal complaint indicating that the statements contained therein were true, including that she had been constructively discharged, which requires resignation as a necessary prerequisite to the cause of action. (R.R. at 261a-322a.)
On October 16, 2014, the trial court conducted an evidentiary hearing limited to whether Dr. Kegerise had intended to resign from her position as the District’s superintendent when she filed her federal complaint. On November 5, 2014, the trial court issued an order directing the School Board to reinstate Dr. Kegerise as the District’s superintendent and restore all back pay and benefits as if her employment had not been interrupted. The School Board filed a nunc pro tunc motion for post-trial relief and, on February 11, 2015, the trial court issued an order denying the same.
On appeal to this Court,[4] the School Board argues that the trial court erred in reinstating Dr. Kegerise because: her federal complaint alleging constructive discharge constituted a resignation; the District had no legal duty to reverse its vote and reinstate Dr. Kegerise as superintendent; the parties stipulated that the procedures the School Board used to accept Dr. Kergerise’s resignation were proper; and Dr. Kegerise was not entitled to a hearing,because she resigned and was not removed for cause.
Discussion
Impact of Federal Complaint
The School Board argues that Dr. Kegerise’s filing of her federal complaint constituted a resignation. According to the School Board, Dr. Kegerise’s verified federal complaint alleging constructive discharge inherently constitutes a resignation because resignation is a necessary prerequisite of the cause of action.
“Constructive discharge occurs only when an employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.” Raya and Haig Hair Salon v. Pennsylvania Human Relations Commission, 915 A.2d 728, 733 (Pa.Cmwlth.2007) (internal quotation omitted). Clearly, a constructive discharge action is assessed by an objective standard. Connors v. Chrysler Financial Corporation, 160 F.3d 971, 974 (3d Cir. Í998) (“The test applied to constructive discharge claims is objective whether a reasonable jury could conclude that [the employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.”). On its face, the constructive discharge standard contemplates termination without a *935 plaintiffs actual resignation, as long as a reasonable person would have felt compelled to resign, even .if the plaintiff did not actually resign. The test is whether a hypothetical, reasonable employee would have resigned, not the employee alleging constructive discharge.'
Additionally, “[e]mployee resignations ... are presumed to be voluntary.” Leheny v. City of Pittsburgh, 188 F.3d 220, 227 (3d Cir.1999). However, an employee’s resignation will be deemed involuntary where the employer forces the resignation by coercion or duress. Id. at 228. Here, Dr. Kegerise alleged that a reasonable person in her position would feel compelled to resign. Thus, she alleged that the School Board’s conduct would force a reasonable person to involuntarily resign. It would be inexplicable to hold that the School Board is authorized to act as if Dr. Kegerise resigned voluntarily when she alleged that it created circumstances that compelled an involuntary resignation. As the trial court aptly noted, “the General Assembly provided a very limited methodology for removing superintendents and assistant superintendents in order to insulate them from arbitrary and capricious activities of the School Board and its individual members.” (Trial court op. at 4.) To endorse the School Board’s argument would essentially authorize a school board to create a condition that would constitute a termination as a matter of law, i.e., intolerable working conditions that would compel a reasonable person to resign, but permit it to proceed as if" an employee executed a voluntary resignation. The School Board’s assertion would thwart the General Assembly’s deliberate removal procedure for superintendents and, therefore, must fail. Accordingly, the School Board’s argument that Dr. Kegerise’s filing of a federal complaint alleging constructive discharge constituted a resignation is unpersuasive.
Writ of Mandamus
The School Board next argues that the trial court’s order reinstating Dr. Keg-erise was erroneous because it directs the School Board to reverse its exercise of discretion ■ in accepting her federal complaint as a resignation. The School Board also argues that the trial court erred because Dr. Kegerise failed to sustain her burden of establishing a clear right to relief and a corresponding duty in the School Board to reinstate her to. the superintendent position. Conversely, Dr. Kegerise argues that Section . 1080 of the Public School Code of 1949 (School Code)[5] provides the exclusive mechanism for removing superintendents and the School Board’s failure to follow the enumerated procedures provided therein establishes her clear right to reinstatement..
Mandamus is an extraordinary remedy designed to compel the performance of a ministerial act or a mandatory duty and may only be granted where the plaintiff has established a clear legal right, a corresponding duty in the defendant, and that no other appropriate remedy is available. Orange Slones Co., 32 A.3d at 290. “The purpose of a mandamus is not to establish legal rights but only to enforce those legal rights that have already been-established.” Id. However, mandamus may not be used to “direct the exercise of judgment or discretion in a particular way, or to direct the retraction or reversal of an action already taken.” Chanceford Aviation Properties, L.L.P. v. Chanceford Township Board of Supervisors, 592 Pa. 100, 923 A.2d 1099,1108 (2007).
Section 1080 of the School Code provides that:
*936 (a) District superintendents and assistant district superintendents may be removed from office and have their contracts terminated, after' hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well- as to each member of the board of school directors,
24 P.S. § 10-1080(a).
This Court’s decision in Bums v. Board of Directors of Unioniown Area School District, 748 A.2d 1263 (Pa.Cmwlth.2000), is instructive. In Bums, the plaintiff was a duly-elected superintendent serving a five-year term that expired in June 1998. In May 1997, three board members lost their respective elections; before their terms expired, a majority of the school board elected the plaintiff to superintendent for an additional five-year term from July 1998 to July 2003 and approved his compensation and other terms and conditions for the same. However, in December 1997, before the plaintiffs existing contract expired, a newly-elected board voted to rescind his upcoming 1998-2003 contract. Accordingly, the plaintiff filed a mandamus action seeking to compel the school district to reinstate him as. duly-elected superintendent pursuant to the School Code. The trial court granted the district’s preliminary objections and dismissed the plaintiffs complaint.
The plaintiff appealed to this Court, arguing that the prior school board lawfully elected-him, set his salary, and, as such, the new school board prevented him from fulfilling his duties and bypassed the only statutory provisions authorizing removal. According to the plaintiff, mandamus was appropriate to compel the district “to hon- or the due election of Superintendent and the provisions of his contract.” Id. at 1266.
We acknowledged that the plaintiff had an available remedy via a contract action to repair the contractual harm to the plaintiff. But, we recognized the General Assembly’s special attention to the superintendent position:
A superintendent does not have tenure like the professional employees, e.g., principals, teachers, etc. A superintendent is not protected by collective bargaining under Act 195[6] nor is he included under Act 93,[7] as administrators are, with certain rights to meet and discuss. Superintendents have, however, obviously been given select consideration by the Legislature in the School Gode, which gives them unique status as a non-voting board member as well as being the chief executive officer of the District. Long term job security for that office is provided by mandating a minimum contract length of at least three years, by restricting removal to four specific reasons, [and] by forcing the school boards to make a decision on retention at least five months before the expiration of the contract .... ”
By expressly mandating the procedure for the re-election of [the plaintiff] for renewal of his contract and by expressly providing for removal thereafter, the Legislature excluded by implication any exception to that procedure in election years for school board members, i.e., *937 expression unium est exclusion alteri-um.
Id. at 1266-67.
We noted that the school board’s decision to elect the plaintiff to an additional five-year term prior to the expiration of the individual members’ terms was “a lawful and mandated fulfilling of its duty under the School Code to act upon [the plaintiffs] expiring tenure” and reasoned that the school board’s lawful election triggered the imposition of statutory duties on the superintendent and an obligation to perform those duties. Id. at 1270. As such, we stated that “[t]he relationship between a superintendent, a school board and a school district is, therefore, not merely contractual, but is also statutory.” Id. at 1269. Consequently, we determined that the harm sought to be remedied was not merely for a breach of contract; rather, it was for a statutory breach “to enforce the School Code’s provisions regarding election, setting compensation and enforcement of the duties of a duly elected superintendent.” Id.
Moreover, because the School Code provides for the plaintiffs election, tenure, duties, and compensation, we determined that any potential contract damages were insufficient to remedy the statutory- harm committed by the plaintiffs improper removal. We reasoned that the plaintiff had a clear legal right to performance of his statutory duties and, therefore, a corresponding duty existed in the school board to reinstate him and provide him with the agreed-upon compensation. However, we clarified that mandamus was not appropriate to enforce the remaining provisions of the plaintiffs employment contract because the School Code is silent regarding any other employment conditions of a superintendent other than the length of term, compensation, ánd a recital of certain statutorily mandated duties. See also Section 1081 of the School Code, 24 P.S. § 10-1081.
The case of Antonini v. Western Beaver Area School District, 874 A.2d 679 (Pa. Cmwlth.2005), is also .instructive. In An-tonini, the superintendent plaintiff was suspended with pay following allegations that, inter alia, he had authorized the transfer of Title I[8] funds to use for tuition reimbursement for two teachers studying for principal certificates in excess of the amount provided for in the relevant collective' bargaining agreement and failed to give the school board the requisite five days’ notice when interviewing a prospective employee. The plaintiff filed a complaint, seeking reinstatement until formal charges had been filed and a statutorily mandated hearing had been held or, alternatively, contractual damages "for unilateral termination. The trial court granted mandamus and ordered the plaintiffs reinstatement, distinguishing the Supreme Court’s decision in Burger v. Board of School Directors of McGuffey School District, 576 Pa. 574, 839 A.2d 1055 (2003),[9] *938 because the allegations did not constitute “serious misconduct” sufficient to warrant noncompliance with section 1080 of the School Code and the school board did not sufficiently observe the plaintiffs procedural due process rights. Antonini, 874 A.2d at 682.
On appeal to this Court, we distinguished the allegations presented from those in Burger and rejected “the School Board’s assumption that its ‘managerial prerogative’ to suspend with pay is generally available.” Id. at 683. Instead, we stated that “resort to procedures beyond those specified in the School Code is the exception rather than the rule .... It is the seriousness of the misconduct alleged that forms the necessity for the implied power.” Id. Accordingly, because the suspension was not executed in compliance with section 1080 of the School Code, we concluded that the plaintiff established “a clear right to be treated in accordance with those explicit statutory provisions.” Id. Moreover, considering the factors articulated in Burger, we reasoned that any other available remedies were inadequate and, therefore, mandamus was proper.
While the facts of Bums and Antonini are readily distinguishable from the present matter because the School Board did not initiate action against Dr. Kegerise for disciplinary reasons, the analysis therein is applicable here. Although the School Code is silent regarding a school board’s authority to accept a superintendent’s resignation, the School Board’s action had the identical effect as that of the school boards in Bums and Antonini-, a superintendent’s removal.[10] However, as we articulated in Bums, because the School Board had elected Dr. Kegerise to a valid employment term pursuant to the School Code, she was subject to statutorily-mandated duties as superintendent and has a clear legal right to perform the same. See Bums, 748 A.2d at 1270; 24 P.S. § 10-1081. Additionally, Bums instructs that the School Board has a corresponding duty to reinstate Dr. Kegerise and provide her with the agreed-upon compensation. Moreover, we find Antonini persuasive in that it advises that a school board’s “manageri *939 al prerogative” is not unlimited and a resort to procedures beyond those specified in the School Code is the exception rather than the rule. Although this is a fact-intensive case that implicates conduct the General Assembly did not apparently contemplate, i.e., accepting a superintendent’s resignation, we decline to endorse an implied procedure that could circumvent the School Code’s limited removal mechanism. Therefore, because Dr. Kegerise has a clear legal right to perform her duties as superintendent under the School Code and the School Board has a corresponding duty to reinstate her, the trial court’s issuance of mandamus was proper.
The School Board’s Procedures
The School Board next argues that the trial court erred in finding that the procedures the School Board used to accept Dr. Kegerise’s alleged resignation were improper because the parties stipulated that those procedures were proper.
In its opinion, the trial court stated, in pertinent part:
At the next regularly scheduled Board meeting on April 21, 2014, an executive session was called in the middle of the public session wherein the Board determined to take a vote on whether to accept Plaintiff’s “resignation” in the form of the Federal Complaint. During the hearing on October 16, 2014, Defendant Kathy DelGrande testified that in her history as a Board member that the Board, as a whole, had never amended its agenda in the middle of a meeting. (N.T. p. BB). Further, the Board had never accepted a resignation from an employee that was not in writing. (N.T. p. 33).
(Trial court’s op. at 11) (internal footnote omitted).
The trial court also noted that only six of the nine board members were present at the mid-meeting executive session. (Trial court op. at 11 n.6.)
The School Board is correct that the parties stipulated that “[t]he Board did not violate the School Code or any Board policy or practice by adding to the Agenda the Motion.” (R.R. at 51a.) However, contrary to the School Board’s assertion, the trial court did not. determine that the procedures were improper; instead, it only acknowledged how the vote occurred. The stipulation does not prohibit the trial court from recognizing the unusual nature of the School Board’s conduct. As the record indicates, the procedures that were used, although lawful, were novel. Therefore, we discern no error in the trial court’s consideration of the procedures that culminated in the School Board’s vote to accept Dr. Kegerise’s alleged resignation.
Hearing
Finally, the School Board argues that the trial court erred when it determined that Dr. Kegerise was entitled to a hearing under the School. Code when she did not request one and-a hearing is not required in the event of a superintendent’s resignation.
As articulated above, Dr. Kegerise’s filing of the federal complaint did not constitute a resignation and the School Board’s argument in that regard must fail. Similarly, section 1080 of the School Code does not require that a superintendent request a hearing. Rather, it states that “superintendents may be removed from office and have their contracts terminated, after hearing, by a majority vote of the board of school directors of the district .... ” 24 P.S. § 10-1080(a) (emphasis added). The General Assembly did not include a statutory requirement that a superintendent request a hearing and, thus, it would be improper for this Court to impose one. Therefore, we discern no error in the trial *940 court’s conclusion that “[i]n the event the Board has a basis to terminate Dr. Kegerise, it should proceed under the provision of 24 P.S. § 10-1080.” (Trial court op. at 14.)
Conclusion .
The School Board’s argument that Dr. Kegerise’s filing of the federal complaint constituted a resignation because resignation is a necessary predicate of the cause of "action is unpersuasive. Additionally, the School Board’s assertion that mandamus is improper because Dr. Kegerise' failed to establish a clear right to relief and a corresponding duty in the School Board to reinstate her must fail. Moreover, we discern no error in the trial court’s, consideration of tlie novel, but lawful, procedures the School Board used in voting on Dr. Kegerise’s alleged resignation and its conclusion that, because she did not resign, a hearing pursuant to section 1080 of the School Code would be proper if the School Board chooses to remove her as superintendent.[11]
Judge Wojcik did not participate in this decision.

ORDER

AND NOW, this 13th day of September, 2016, the November 5, 2014 order of the Court of Common Pleas of Dauphin County is affirmed.

. : This opinion was reassigned to the author on April 28, 2016.

. The named appellants are individual members of the School Board.

.By letter dated April 21, 2014, Dr. Kegerise's physician advised that Dr. Kegerise , "is to be off of work until further notice due to work related medical issues.” (R.R. at 556a.)

. Our scope of reviewing in a mandamus action is limited to determining whether the • trial court abused its discretion or committed an error of law and whether sufficient evidence exists to support the trial court’s findings. Orange Stones Co. v. City of Reading, Zoning Hearing Board, 32 A.3d 287, 289-90 (Pa.Cmwlth.2011). Our standard of review of a trial court’s grant of mandamus is de novo. County of Carbon v. Panther Valley School District, 61 A.3d 326, 331 n. 3 (Pa.Cmwlth. 2013).

. Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 10-1080.

. Public Employe Relations Act, Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§ 1101.101 - 1101.2301.

. Section 1164 of the School Code was added by the Act of June 29, 1984, P.L. 438, as amended, 24 P.S. § 11-1164. Section 1164 of the School Code is commonly known as "Act 93."

. Part A of the Elementary and Secondary Education Act of 1965, as amended, 20 U.S.C. §§ 6301-6339, 6571-6578.

. In Burger, the superintendent plaintiff was suspended without pay pending investigation of allegations that he had sexually harassed a school district employee. Prior to a removal hearing, the plaintiff filed a complaint seeking, inter alia, reinstatement to his position because the School Code did not authorize a superintendent's suspension absent a hearing. The trial court granted mandamus and directed the plaintiff's reinstatement. The school district appealed to this Coprt and, in a divided en banc opinion, we reversed, reasoning that the plaintiff had failed to establish the lack of an alternative remedy because, ultimately, he could appeal the adverse removal decision pursuant to section 752 of the Local Agency Law, Act of April 28, 1978, P.L. 202, as amended, 2 Pa.C.S. § 752. However, we noted that section 1080 of the School Code *938 was silent regarding suspension, but concluded that suspension pending removal is an inherent managerial prerogative when serious misconduct charges are levied; however, w¿ noted that the school board’s suspension prerogative was limited by procedural due process.
On appeal, our Supreme Court rejected any categorical rule that "the availability of a post-termination appeal necessarily constitutes an adequate remedy with respect to a prior, pre-hearing deprivation in the nature of an interim, uncompensated suspension of a public employee.” Burger, 839 A.2d at 1060. Rather, the Supreme Court stated that "the adequacy-of-remedy question as applied to such a deprivation requires a more fact-dependent inquiry, as well as a more circumspect approach on the part of tire reviewing court, particularly in view of the impact on the employee’s livelihood” and articulated a list of factors that must be considered when evaluating the adequacy of any alternative remedy. Notwithstanding the different test applied, the Supreme Court affirmed our order, noting that the School Code "vests school districts in this Commonwealth with ‘all necessary powers to enable them- to carry out [the School Code’s] provisions’ ” and reasoning that “the School Code’s removal provision pertaining to superintendents does not divest school boards of their implied authority to suspend such officials accused of serious misconduct ... within the constraints of procedural due process.” Id. at 1061 (citing Section 211 of the School Code, 24 P.S. § 2-211).

. The School Code vests school boards with all necessary powers to appoint an acting superintendent to fill any vacancy. See Sections 211 and 1079 of the School Code, 24 P.S. §§ 2-211, 10-1079. However, as articulated above, Dr. Kegerise’s filing of a federal complaint alleging constructive discharge did not constitute a resignation and, therefore, no vacancy existed for the School Board to take action to fill.

. The Dissent asserts that issuance of mandamus is improper because Dr. Kegerise's employment contract contained a provision stating that she need not provide notice of her resignation in the event she is constructively discharged. According to the Dissent, Dr. Kegerise exercised her contractual right pursuant to this provision, resigned pursuant to the same, and the School Board acted within its discretion to accept that decision. The Dissent would resolve this matter purely on contractual grounds.
The contract provision the Dissent identifies states that “[n]o notice whatsoever shall be required ... should her resignation be ... caused by constructive termination by the Board.” (R.R. at 133a.) Therefore, for this provision to be implicated, Dr. Kegerise’s resignation must be caused by constructive termination by the School Board. If, pursuant to the Dissent's position, this is purely a contractual matter, it could be argued that, by accepting her resignation pursuant to the contract provision, the School Board conceded that Dr. Kegerise was constructively discharged. However, throughout this litigation, the School Board has averred that Dr. Kegerise was not constructively discharged. Moreover, in its April 22, 2014 letter, the District’s counsel advised Dr. Kegerise that she had breached her employment contract because she failed to provide the requisite sixty days’ notice of her resignation. (R.R. at 25k.) Finally, there is no authority, statutory, contractual, or otherwise, indicating that the School Board has any discretion in this matter. The Dissent's rationale would essentially authorize the School Board to take advantage of a contractual provision that it disputes ever occurred. Rather, the School Board “has to pick an option ... but not both.” Op. at 946.)
Importantly, as we stated in Bums, “[t]he relationship between a superintendent, a school board and a school district is, therefore, not merely contractual, but is also statutory.” Id. at 1269. Therefore, contrary to the Dissent's position, this is not merely a contractual matter and an attempt to reduce it to such is erroneous. This is a statutory matter governed by the School Code and section 1080 of the School Code provides the exclusive mechanism for a superintendent's removal.